UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

20 OCT 10 P 3 36

U.S. DISTRICT COURT
DISTRICT OF MASS

|  |  |
|---|---|
| SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC., Plaintiff )<br><br>v. )<br><br>KNOEDLER ARCHIVUM, INC. f/k/a M. KNOEDLER & COMPANY, INC., Defendant ) | Civil Action No. 03-CV-30219-MAP |

## PLAINTIFF, SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC.'S, MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KNOEDLER ARCHIVUM, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

MARK D MASON, ESQUIRE
Cooley, Shrair, P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042
BBO# 544936
mmason@cooleyshrair.com

# TABLE OF CONTENTS

Page

Table of Authorities...................................................................................................1

Argument..................................................................................................................1

I.   Knoedler Archivum, Inc. is Not Entitled to Judgment on the Pleadings...................1

    A.   There Remain Issues of Material Fact in Dispute and Defendant
        is Not Entitled to Judgment as a Matter of Law.......................................1

    B.   The Amended Complaint is Not Time-Barred on its Face..........................3

        1.   The Doctrine of Equitable Tolling Applies to Plaintiff's Claim...............4
        2.   The Museum Enjoys the Protection of the Discovery
            Rule..................................................................................................4
        3.   The Doctrine of Fraudulent Concealment Applies to Plaintiffs' Claims......6

    C.   The Museum's M.G.L. c. 93A Claim is Not Barred by the
        Statute of Limitations...............................................................................8

II.   Conclusion............................................................................................................8

# TABLE OF AUTHORITIES

## Federal Cases

Page

Aiken v. Lerner,
485 F. Supp. 871, 873 (D.N.J. 1980) ..................................................2

Blank v. Berman,
598 F. Supp. 1081, 1083 (D. Mass. 1994) ............................................1

C. F. Sleeper vs. Kidder, Peabody & Co.,
480 F. Supp. 1264, 1265 (D. Mass. 1979).............................................7

Cumins Insurance Society v. City Bank, N.A.,
921 F. Supp. 1100 (S.D.N.Y. 1996).....................................................4

Feliciano v. State of Rhode Island,
160 F. 3d 780 (1st. Cir. 1998)............................................................1

C. Wright & A. Miller, Federal Practice and Procedure,
§1327 at 762-763 (1990).................................................................2

Fudge v. Penthouse International, Ltd.,
840 F. 2d 1012 (1st Cir. 1988)..........................................................2

Geupel v. Benson,
704 F. Supp. 312 (D. Mass. 1989.......................................................1

Gonzalez v. United States,
284 F. 3d 281 (2002).....................................................................4, 6

J. M. Blythe Motor Lines Corp. v. Balock,
310 F. 2d 77 (5th Cir. 1962)............................................................1

Salois v. Dime Savings Bank of New York, F. S. B.,
128 F. 2d 20 (1st Cir. 1997).............................................................4

Slavin v. Morgan Stanley & Co., Inc.,
791 F. Supp. 327, 331 (1992)...........................................................7

Watterson v. Page,
987 F. 2d 1 (1st Cir. 1993)...............................................................2

Wolin v. Smith Barney, Inc.,
83 F. 3d 847 (7th Cir. 1996).............................................................4

## State Cases

Page

Albrecht v. Clifford,
    463 Mass. 706, 767 N.E. 2d 42 (2002) ........................................................................ 5

Bowen v. Eli Lilly & Co.,
    408 Mass. 204, 205-206 (1990) ............................................................................ 5, 6

Commonwealth v. DeCotis,
    366 Mass. 234, 242 (1974) ................................................................................. 8

Friedman v. Jablonski,
    371 Mass. 482 (1976) ........................................................................................ 5

Graves v. R.M. Packer, Inc.,
    702 N.E. 2d, 45 Mass. App. Ct. 760 rev. den. 707 N.E. 2d  21(1998) ................. 8

Lindsay v. Romano,
    427 Mass. 771, 774 (1998) ................................................................................. 5

Patsos v. First Albany Corp.,
    433 Mass. 323, 741 N.E. 2d 841 (2001) ............................................................ 5

Protective Life Insurance Company v. Sullivan,
    425 Mass. 615 (1997) ..................................................................................... 4, 5

Riley v. Presnell,
    409 Mass. 239, 243 (1991) ................................................................................. 5

Schuback v. Household Financial Corp.,
    375 Mass. 133, 137 (1978) ................................................................................. 8

Taygeta Corp. v. Varian Association, Inc.,
    436 Mass. 217 (2002) ..................................................................................... 5, 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC., Plaintiff ) ) ) ) ) vi. ) KNOEDLER ARCHIVUM, INC. f/k/a M. KNOEDLER & COMPANY, INC., Defendant ) ) ) ) ) | Civil Action No. 03-CV-30219-MAP |

## PLAINTIFF, SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC.'S, MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KNOEDLER ARCHIVUM, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

### ARGUMENT

**I.    Knoedler Archivum, Inc. is Not Entitled to Judgment on the Pleadings.**

**A.    There Remain Issues of Material Fact in Dispute and Defendant is Not Entitled to Judgment on the Pleadings as a Matter of Law.**

The Defendant, Knoedler Archivum, Inc.'s (hereinafter "Knoedler"), Motion for Judgment on the Pleadings should be denied whereas the pleadings do not fully set forth the material facts herein.  A Rule 12(c) Motion for Judgment on the Pleadings should be granted only where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Feliciano v. State of Rhode Island, 160 F. 3d 780, 788 (1st Cir. 1998); Geupel v. Benson, 704 F. Supp. 312, 313 (D. Mass. 1989).  In deciding the Defendant's Rule 12(c) Motion, the Court must accept all factual allegations of the Amended Complaint as true and shall allow the Defendant's Motion only if the Defendant is "clearly entitled to judgment on the basis of facts as Plaintiff has presented them." Blank v. Berman, 598 F. Supp. 1081, 1083 (D. Mass. 1994).  Accordingly, Knoedler's Motion should not be allowed if the undisputed facts alleged in the pleadings, together with any facts which the Court may judicially note, establish that no relief can be granted to Springfield Library and Museum Association,

Inc. (hereinafter the "Museum").  See J. M. Blythe Motor Lines Corp. v. Balock, 310 F. 2d 77, 79 (5th Cir. 1962).

This Court may consider documents outside of those attached to the Amended Complaint if their authenticity is not disputed.  Watterson v. Page, 987 F. 2d 1, 3-4 (1st Cir. 1993); Fudge v. Penthouse International, Ltd., 840 F. 2d 1012, 1015 (1st Cir. 1988)(holding that "when" a plaintiff fails to introduce a pertinent document as part of this "pleading," defendant may introduce the exhibit as part of his motion attacking the pleading).  See also C. Wright & A. Miller, Federal Practice and Procedure §1327 at 762-763 (1990).  In this regard, Knoedler relies upon selected documentation to attack the Museum's pleading without supplying this Court all relevant documentation and facts.  Importantly, Knoedler has failed to identify relevant documentation establishing genuine issues of material fact which remain in dispute.  See Exhibits "A" through "E" attached to Affidavit of Mark D Mason, Esquire, hereto; see Aiken v. Lerner, 485 F. Supp. 871, 873 (D.N.J. 1980).

The Museum can prove through extrinsic evidence that its claims are not barred by the relevant statutes of limitations, and that the Defendant is not entitled to Judgment on the Pleadings.  In this regard, documentation Knoedler fails to identify demonstrates that significant questions remained extent for both Knoedler and the Museum relating to the Italian Government's claim.  Indeed, the issue relating to whether the Italian Government had identified the painting Knoedler sole the Museum remained unresolved until 2001.  For example, Knoedler excludes the Museum's September 2, 1966 correspondence to Knoedler wherein the Museum states, "At any rate, my rough draft of the letter I find the situation not at all changed from our point of view."  See Exhibit "A."  In Knoedler's reply, dated September 14, 1966, which Knoedler excludes, the Defendant identifies "an important point which we have not as yet resolved."  See Exhibit "B."  In its September 14, 1966 correspondence, Knoedler further states that, "other than Arslan's statement, constantly repeated and referred to in the Italian correspondence, and despite the batch of photocopies this and that which have been sent to you, no positive proof has been presented to you that the picture was actually in the Italian Embassy in Warsaw."  Id.  Moreover, Knoedler writes, "I have little knowledge of such things, but I feel positive that any court of law, either here or abroad, would demand such evidence."  Id.  Defendant's September 14, 1966 letter raises significant questions and concerns relating to the integrity of the Italian Government's allegations.

In addition to the correspondence recited above, the Museum made inquiry as to the authenticity of "Spring Sowing" through correspondence which Knoedler, likewise, fails to acknowledge. On May 25, 1966, the Museum wrote to the Italian Government inquiring as to the dimensions of the painting at issue and requesting clarification with regard to Arslan's Publication connecting the painting to Springfield. See Exhibit "C". On July 25, 1966, the Museum received a letter from the Italian Government attempting to clarify the Museum's inquiries. See Exhibit "D". Finally, on September 21, 1966, the Museum wrote to the Italian Government and, again, requested clarification as to when the theft of the "Spring Sowing" was first discovered, by whom, and when such theft was reported to the Italian and the Polish authorities. See Exhibit "E". In this latter regard, the Museum inquired as to whether there existed inventory records illustrating that the painting was in the Italian Embassy in Warsaw at the time of the alleged theft. Id. The answers to the questions posed in 1966 remained a mystery until 2001, when the Museum returned "Spring Sowing" to the Italian Government. See Amended Complaint at paragraph 14.

## B.    The Amended Complaint is Not Time-Barred on its Face.

Contrary to the Defendant's urgings, the Museum's allegations are not time-barred on the face of its Amended Complaint. The within statutes of limitations did not arise, at the earliest, until the date the Italian Government demanded "Spring Sowing" on October 20, 2000. In this regard, the Museum alleges, at Paragraph 12 that, "It was not until on or about October 20, 2000, that the Springfield Museums had a reasonable basis to believe Knoedler's representations to the Springfield Museums were false." The Museum's Amended Complaint at Paragraph 33 sets forth that, "The Springfield Museums' reliance was known or should have been known to Knoedler, and Knoedler made the misrepresentations hereinbeforementioned knowing them to be false and fraudulent with the intention of deceiving and inducing the Springfield Museums to rely on such misrepresentations." Paragraph 13 of the Amended Complaint sets forth the basis of the Springfield Museum's knowledge, "On or about October 20, 2000, the Italian Government

transmitted correspondence to the Springfield Museum's setting forth facts asserting that "Spring Sowing" had been stolen from the Italian Embassy in Warsaw during World War II."

## 1. The Doctrine of Equitable Tolling Applies to Plaintiff's Claims.

The Museum can establish that the applicable Statutes of Limitations should be equitably tolled. "The Doctrine of Equitable Tolling is applicable only where the prospective plaintiff did not have, and could not have with due diligence, the information essential to bring suit." Protective Life Insurance Company v. Sullivan, 425 Mass. 615, 631 (1997) citing Wolin v. Smith Barney, Inc., 83 F. 3d 847, 852 (7th Cir. 1996). A party attempting to invoke the Doctrine will be held to a duty of reasonable inquiry. Protective Life Insurance Company v. Sullivan, 425 Mass. at 631. Further stated, the Doctrine of Equitable Tolling suspends the running of the Statute of Limitations if a Plaintiff, in exercise of reasonable diligence, could not have discovered information essential to sue. Gonzalez v. United States, 284 F. 3d 281, 282 (2002).

The Italian Government abandoned its 1966 inquiry when it failed to pursue a claim or respond to the Museum's questions relating to "Spring Sowing." Indeed, The Museum exercised "reasonable diligence" in attempting to determine whether or not the painting in its possession belonged to the Italian Government. Gonzalez v. United States, 284 F. 3d 281, 282 (2002). While The Museum sought crucial information regarding the provenance of the painting the Italian Government requested, the Italian Government failed, ultimately, to respond to the Museum's inquiries. The Italian Government's actions, as such, precluded The Museum from discovering information essential to bring suit. See Id. In fact, Knoedler ratified The Museum's conclusion that the Italian Government's assertions were suspect. Hence, the Doctrine of Equitable Tolling is applicable to the within matter, and the Museum should not precluded from bringing its claims against Knoedler. See Salois v. Dime Savings Bank of New York, F.S.B., 128 F. 2d 20, 25 (1st Cir. 1997) ("Tolling is appropriate only when the circumstances that caused a Plaintiff to miss a filing deadline are out of his hands").

## 2. The Museum Enjoys the Protection of the Discovery Rule.

The Museum had a reasonable basis to question whether it had good title to the "Spring Sowing" in 2000. Under the Massachusetts Discovery Rule, a statute of limitations does not

begin to run until the prospective plaintiff learns or should have learned that [it] has been injured. Patsos v. First Albany Corp. 433 Mass. 323, 328, 741 N.E. 2d 841, 846 (2001); Protective Life Insurance Company v. Sullivan, 425 Mass. 615, 631 (1997). The Discovery Rule operates to toll the statute of limitation where a fact was "inherently unknowable" to the aggrieved party or until a plaintiff "knew or should have known" of its cause of action. Protective Life Insurance Company v. Sullivan, 425 Mass. at 632 citing Friedman v. Jablonski, 371 Mass. 482, 485 (1976); Albrecht v. Clifford, 436 Mass. 706, 714, 767 N.E. 2d 42, 49 (2002). The Italian Government's thirty-four year abandonment of its 1966 claim reasonably led the Museum to believe it held good title to "Spring Sowing." Hence, the statute of limitations was tolled until, at the earliest, October 20, 2000.

At a minimum, there exists a genuine issue of material fact as to whether the Museum knew, or reasonably should have known, that it had been harmed by Knoedler's actions prior to October 20, 2000, at the earliest. See Taygeta Corp. v. Varian Association, Inc., 436 Mass. 212 (2002). A disputed fact, as such, should not be resolved upon a Rule 12(c) Motion. (Overruling a Superior Court Ruling granting Defendant's Motion for Summary Judgment wherein a disputed issue existed relating to the Discovery Rule and finding that a jury should resolve such a disputed issue). See also Patsos v. First Albany Corp., 443 Mass. 323 (2001). The question of "when a plaintiff knew or should have known of its cause of action is one of the facts that will be decided by the trier of fact." Taygeta Corp. v. Varian Assoc., Inc., 436 Mass. 217, 763 N.E. 2d 1053 (2002). citing Riley v. Presnell, 409 Mass. 239, 243 (1991); Lindsay v. Romano, 427 Mass. 771, 774 (1998). The appropriate standard to be applied when assessing knowledge or notice is that of a "reasonable person in plaintiff's position." Taygeta Corporation v. Varian Associates, Inc., 436 Mass. 217 citing Riley v. Presnell, 409 Mass. 239 at 245; Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-206 (1990). Knoedler's request for dismissal falls at an early stage in the within litigation and is misplaced.

The Museum has met its burden of demonstrating that in the exercise of reasonable diligence it could not have learned of the facts and circumstances of its claim far earlier. See

discussion supra at page 2-3.  Taygeta Corp. v. Varian Association, Inc., 436 Mass. 217 (2002). Although the Italian Government may have requested the return of a painting purporting to be "Spring Sowing" in 1966, the Italian Government abandoned its demand and neglected to respond to the Museum's last correspondence, dated September 21, 1966.  Contrary to Knoedler's assertion, the Museum could not have "learned of the facts and circumstances of its claim" because it did not possess information which both Plaintiff and Defendant deemed necessary to determine the legitimacy of the Italian Government's claim.  See Taygeta Corp. v. Varian Association, Inc., 436 Mass. 217.  Importantly, The Museum neither had knowledge nor sufficient notice that it was harmed nor knowledge or sufficient notice of what the cause of harm was.  Compare Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204 (1990).

### 3.  The Doctrine of Fraudulent Concealment Applies to Plaintiffs' Claims

Plaintiff is entitled to tolling of the Statute of Limitations for its claims based upon the Massachusetts Doctrine of Fraudulent Concealment.  Under Massachusetts law, when the Defendant fraudulently conceals a cause of action from the knowledge of the Plaintiff, the statute of limitations is tolled for a period prior to the Plaintiff's discovery of the cause of action. M.G.L. c. 260 §12.  The Statute of Limitations under the Doctrine of Fraudulent Concealment may be tolled where two conditions are met.  "First, the Defendant raising the Limitations defense must have engaged in fraud or deliberate concealment of material facts relating to the wrongdoing.  Second, the Plaintiff must have failed to discover these facts within the normal limitations despite his or her excise of due diligence." Gonzalez v. United States, 284 F. 3d 281, 282 (1st Cir. 2002).

Plaintiff's Amended Complaint sets forth facts alleging the Defendant fraudulently concealed the provenance of "Spring Sowing."  In particular, The Museum alleged that Knoedler fraudulently represented that it was the lawful owner of "Spring Sowing," that it was passing good and clear title to "Spring Sowing" to The Museum, and that it would warrant and defend The Museum against claims in order to induce The Museum to purchase "Spring Sowing."

Amended Complaint to Paragraph 32. Further, The Museum alleges that as a result of "Knoedler's misrepresentations, omissions, and fraudulent concealments, the Springfield Museums learned that it was not the lawful owner of "Spring Sowing" until in or about 2001. Id. at Paragraph 34. In this regard, sufficient facts were not available to the Museum until 2001 to put The Museum on notice of the possibility of fraud. See Salois supra at 25.

Secondly, the Museum exercised due diligence in attempting to disclose the fraud the Museum alleges herein. As set forth above, the correspondence exchanged between the Museum and the Italian Government and the Museum and Knoedler in 1966, constitutes reasonable due diligence in ascertaining the veracity of the Italian Government's claim and the existence of fraud on Knoedler's part. See Id. at 25 – 26. Whether The Museum was reasonably diligent in ascertaining its claims, regardless, is a matter of fact to be determined by a jury.

The Museum has met its burden of alleging facts which could lead to an inference of reasonable diligence. See Slavin v. Morgan Stanley & Co., Inc., 791 F. Supp. 327, 331 (1992). Nothing in the record supports the conclusion that the Museum has not exercised reasonable diligence as a matter of law. Id. at 26. C. F. Sleeper vs. Kidder, Peabody & Co., 480 F. Supp. 1264, 1265 (D. Mass. 1979). Importantly, Knoedler was well aware of questions which remained relating to art which the Nazis stole in the years following World War II. Rather than engage in the research the Italian Government undertook in establishing "Spring Sowing's" provenance, Knoedler summarily dismissed the painting's provenance limiting its prior ownership to a Swiss family by the name of "Peasch." As one of the foremost international sellers of renaissance art, Knoedler was aware or should have been aware of its obligation to conduct such in-depth research into the painting's provenance.

**C.    The Museum's M.G.L. c. 93A Claim is Not Barred by the Statute of Limitations.**

The Museum asserts that Knoedler's unfair and deceptive practices under M.G.L.c. 93A occurred at the time the Museum demanded the value of the painting, not when the painting was sold, as Knoedler alleges.    In this regard, Knoedler committed unfair and deceptive trade practices when it refused to honor the Museum's demand transmitted on December 14, 2001. (Whether a given practice is unfair or deceptive under Chapter 93A must be determined from the circumstances of each case.) Commonwealth v. DeCotis, 366 Mass. 234, 242 (1974); Schuback v. Household Financial Corp., 375 Mass. 133, 137 (1978).

When Knoedler sold "Spring Sowing" to The Museum, Knoedler guaranteed that it was the painting's lawful owner, that the painting was free from all encumbrances, and that Knoedler had the right to sell "Spring Sowing." Such was not the case. False statements of fact made of the parties' own knowledge and susceptible of actual knowledge will support an action of deceit without further proof of an actual intent to deceive for purposes of the deceptive trade act or practice statute. Graves v. R.M. Packer, Inc., 702 N.E. 2d, 45 Mass. App. Ct. 760 rev. den. 707 N.E. 2d 21 (1998). Because the sale of "Spring Sowing" was invalid whereas Knoedler was not its rightful owner at the time of sale, Knoedler was obligated to reimburse the Museum for its damages. By failing to do so, Knoedler has committed unfair and deceptive trade practices in violation of M.G.L. c. 93A §§ 2, 11.

## II. CONCLUSION

For the foregoing reasons, the Museum respectfully requests Defendant's Motion for Judgment on the Pleadings be denied.

## REQUEST FOR HEARING

The Museum requests hearing on Defendant's Motion for Judgment on the Pleadings.

SPRINGFIELD    LIBRARY    AND    MUSEUMS
ASSOCIATION, INC.

MARK D MASON, ESQUIRE
Cooley, Shrair, P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042
BBO# 544936

Dated:  October 10, 2003

9

<u>Certificate of Service</u>

I, Mark D. Mason, Attorney for the Plaintiff, do hereby certify that on October 10, 2003, I served or caused to be served upon Defendant a copy of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings by mailing same via First Class Mail, postage prepaid, upon:

Andrius Kontrimas, Esquire
Kerry M. McMahon, Esquire
Jenkins & Gilchrist
1100 Louisiana
Suite 1800
Houston, TX 77002


Kenneth W. Salinger, Esquire
Amy J. Berks, Esquire
Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA  02199

MARK D MASON, ESQUIRE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC., Plaintiff<br><br>v.<br><br>KNOEDLER ARCHIVUM, INC. f/k/a M. KNOEDLER & COMPANY, INC., Defendant | )<br>)<br>)<br>)<br>)    Civil Action<br>)    No. 03-CV-30219-MAP<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF MARK D. MASON, ESQUIRE

I, Mark D. Mason, Esquire, do hereby on oath state and affirm as follows:

1.    I am Mark D. Mason, Esquire, attorney for the Plaintiff in the above-captioned matter.

2.    Attached hereto are true copies of the following documents:

Exhibit A - Letter dated September 2, 1966 from the Springfield Museum of Fine Arts to M. Knoedler and Company;

Exhibit B - Letter dated September 14, 1966 from the Springfield Museum of Fine Arts to M. Knoedler and Company;

Exhibit C - Letter dated May 25, 1966 from the Springfield Museum of Fine Arts to the Italian Government;

Exhibit D - Letter dated July 25, 1966 from the Italian Government to the Springfield Museum of Fine Arts;

Exhibit E - Letter dated September 21, 1966 from the Springfield Museum of Fine Arts to the Italian Government.

Signed under the pains and penalty of perjury this 10th day of October, 2003.

MARK D MASON, ESQUIRE

Exhibit A

September 2, 1966

Mr. Helmut Ripperger, Librarian
M. Knoedler and Company
14 East 57th Street
New York, New York

Dear Mr. Ripperger:

Enclosed is a copy of the latest from Malajoli.

I am not clear about some of the points. Perhaps you could send me your translation. At any rate, my rough draft of the letter I find the situation not at all changed from our point of view.

With every good wish,

Sincerely,

Frederick B. Robinson
Director

FBR:dmm

Enclosure

Exhibit B

A. KNOEDLER & CO., INC.
14 EAST 57ᵀᴴ STREET
NEW YORK 22, N.Y.
PLAZA 3·9742
PARIS. 85ᵇᶦˢ FAUBOURG ST. HONORÉ
LONDON. 34 ST. JAMES'S STREET
CABLE ADDRESSES
"KNOEDLER"
NEW YORK  PARIS  LONDON

September 14, 1966

Mr. Frederick B. Robinson
Director
Museum of Fine Arts
49 Cehtsnut Street
Springfield,3, Massachusetts

Dear Mr. Robinson:

With further reference to
your letter of September 2nd and my reply of the
9th, I can now send you a translation of Mol-
ajoli's latest contribution to the problem.

I still think that Arslan's entry on page 375
is ambiguous but perhaps we might give him the
benefit of the doubt in accepting that he meant
to say what Molajoli says he meant to say.

There is still an important point which we have
not as yet resolved. Other than Arslan's state-
ment, constantly repeated and referred to in the
Italian correspondence, and despite the batch of
photocopies of this and that which have been sent
to you, no positive proof has been presented to
you that the picture was actually in the Italian
Embassy in Warsaw.

I have little knowledge of such things, but I
feel positive that any court of law, either here
or abroad, would demand such evidence.

When was it sent to Warsaw? Is there any cor-
repsondence in this connection? When was its
supposed disappearnce first reported and how?

Mr. Frederick B. Robinson      September 14, 1966    page two

Was an inventory made of the Embassy's contents at
the time?  Were any representations made to the
Polish authorities and if so, when and by whom?
One might even ask for a statement from Arslan
as to the source of his information.

I do think you would be within your rights to ask
for certified copies of the material I have out-
line above.  What think you?

Sincerely,

Helmut Ripperger
Librarian

Exhibit C

May 25, 1966

Professor Bruno Molajoli
Direttore Generale delle Antichita e Belle Art
Ministero della Publica Istruzioue
Rome, Italy

Dear Professor Molajoli:

In answer to your recent letter, I take note that the dimensions sent to us by Rodolfo Siviero as being 49 cm. x 42 cm. have now become 61 cm. x 49 cm. Is this changing like the change from Leandro of your first letter to Jacopo as of the Siviero letter to us?

I also note your reference to the Arslan publication of 1960. From this publication I see the Page 261 reference to the Uffizi picture, the Page 269 statement about Warsaw and the Springfield reference, and the Page 375 entry under Venice where he says that the version formerly in the Pitti Palace is now the one in Springfield! ! Is Arslan your only source for the Warsaw-Springfield connection and, if so, what of the Page 375 entry?

Sincerely,

Frederick B. Robinson
Director

FBR:dmm

cc: Mr. H. Ripperger,
      M. Knoedler & Co., Inc.

Exhibit D

(Translation from Italian)



MINISTRY OF PUBLIC INSTRUCTION

Director General of Antiquities and Fine Arts

Rome, July 25, 1960

Prof. Frederick B. Robinson, Director
Museum of Fine Arts
49 Chestnut Street
Springfield 3, Massachusetts

Dear Prof. Robinson:

Your letter dated May 25 was much delayed in reaching me. My reply must be, confirming what I had said in my previous letter dated May 14:

a) The measurements of the painting by Bassano representing "The Bower" (which belongs to the Uffizi Gallery in Florence, was loaned on deposit to the Italian Embassy in Warsaw, and was taken from the Embassy during the war and is now in the Springfield Museum) are given exactly as 61 x 49 cm in the "Catalogo della R. Galleria degli Uffizi di Eugenio Pieraccini (1406-1910)", on page 148, No. 1045.  On another occasion I sent you a photostatic copy of this publication.

b) The fact that a scholar like Arslan, generally recognized as one of the greatest experts on Bassano problems, proposed a new attribution of the painting to Leandro Bassano in place of the old attribution to Jacopo Bassano, does not in the least interfere with identification of the work.

You certainly are too well acquainted with our "connoisseurs" profession for me to remind you of how often criticism changes the attributions of works of art!

Finally, as regards the various references to the painting contained in Arslan's book, it is clear that there is not the slightest contradiction among them.  On page 201 the painting is referred to

under the name of the Uffizi Museum, which is its legal owner, with
a cross-reference under the name of the Springfield Museum, where the
work is now; indicating thereby that the work itself is no longer in
Florence, where it might be looked for by some scholar who is not up
to date on the painting's vicissitudes;

on page 269 are the description, critical appraisal, history and recent
bibliography of the work, repeating that it "is none other than No.
1559 of the Uffizi Gallery, sent to the Italian Embassy in Warsaw
and disappeared during the war, 1939-1945;"

on page 375, under the name of Venice, Gallery of the Academy, citation
is made, as of a work of the school of Jacopo Bassano, of the copy of
the "Sower," specifying that the original was formerly in the Pitti
Palace (that is, it originally belonged to the collections of the
Medici family; as for the matter of that were all the works of art of
the Pitti Palace and of the Uffizi, which are included in single
inventories--cf. on this the seventeenth-century inventories, of which
too I sent you photocopies-- and which on occasion were transferred
from one place to the other).

This citation of the copy , which is still in Venice, only confirms
that the original painting belonged to the Florentine galleries.

Finally, I should like to make it clear that our identification of
the work is not based only on the data supplied by Prof. Arslan but like-
wise on precise knowledge of the work itself on the base of inventory
documents, photographs and technical information in our possession.

I trust that the above will remove your understandable doubts, and
I await your decision as to the fate of the painting.

                              Yours, etc.
                              /signature/
                              (Bruno Molajoli)

Exhibit E

September 21, 1966

Mr. Bruno Molajoli
Ministero della Publica Istruzione
Il Direttore Generale
Delle Antichita` e Belle Arti
Rome, Italy

Dear Mr. Molajoli:

   In your last letter you repeat what you have written before, still not proving to us that the Springfield painting is the one you say was in the Italian Embassy in Warsaw.

   Arslan's statement still seems the only source for your contention. When was the so-called theft first discovered, by whom, and when reported to the Italian, as well as Polish, authorities? Are there inventory records showing such a painting was in the Embassy at the time?

   Such questions naturally need clarification.

       Sincerely,


      Frederick B. Robinson
      Director


FBR:dmm

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
SPRINGFIELD LIBRARY AND                    )
MUSEUM ASSOCIATION, INC.,                   )
    Plaintiff                               )
)                    Civil Action
)                    No. 03-CV-30219-MAP
v.                                                          )
)
KNOEDLER ARCHIVUM, INC. f/k/a          )
M. KNOEDLER & COMPANY, INC.,             )
    Defendant                              )
)

## AFFIDAVIT OF MARK D. MASON, ESQUIRE

    I, Mark D. Mason, Esquire, do hereby on oath state and affirm as follows:

1.    I am Mark D. Mason, Esquire, attorney for the Plaintiff in the above-captioned matter.

2.    Attached hereto are true copies of the following documents:

    Exhibit A - Letter dated September 2, 1966 from the Springfield Museum of Fine Arts to M. Knoedler and Company;

    Exhibit B - Letter dated September 14, 1966 from the Springfield Museum of Fine Arts to M. Knoedler and Company;

    Exhibit C - Letter dated May 25, 1966 from the Springfield Museum of Fine Arts to the Italian Government;

    Exhibit D - Letter dated July 25, 1966 from the Italian Government to the Springfield Museum of Fine Arts;

    Exhibit E - Letter dated September 21, 1966 from the Springfield Museum of Fine Arts to the Italian Government.

    Signed under the pains and penalty of perjury this 9th day of October, 2003.


                                      _____
                                      MARK D MASON, ESQUIRE