UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-CV-30219-MAD

SPRINGFIELD LIBRARY AND
MUSEUM ASSOCIATION, INC.,
　　　　　Plaintiff

v.

KNOEDLER ARCHIVUM, INC. f/k/a
M. KNOEDLER & COMPANY, INC.,
　　　　　Defendant

)
)
)
)
)
)
)
)
)
)
)

**SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

## I. PRELIMINARY STATEMENT

1. Plaintiff, Springfield Library and Museum Association, Inc. f/k/a The Springfield Museums (the "Springfield Museums") brings this action against Defendant, Knoedler Archivum, Inc. f/k/a M. Knoedler & Company, Inc. ("Knoedler") for Breach of Contract (Count I), Breach of Implied Warranty (Count II), Fraud and Deceit (Count III), Negligent Misrepresentation (Count IV), Innocent Misrepresentation (Count V), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VI) and Violations of M.G.L. c. 93A §§ 2, 11 (Count VII) stemming from Knoedler's sale to the Springfield Museums of a painting entitled Spring Sowing by the Italian artist Jacopo da Ponte known as Il Bassano ("Spring Sowing").

## II. PARTIES AND JURISDICTION

2. The Springfield Museums is a charitable corporation organized under the laws of Massachusetts with a principal place of business at 220 State Street, Springfield, County of

Hampden, Commonwealth of Massachusetts. The Springfield Museums is the successor in interest to the Springfield Museums and acquired all its right, title and interest in and to the within action.

3. Defendant, Knoedler, is a Delaware corporation with a principal place of business at 19 East 70th Street, New York, State of New York. Knoedler Archivum, Inc. is the successor in interest to Knoedler.

### III. FACTS

4. In or about 1955, Knoedler and the Springfield Museums entered into an agreement (the "Agreement") for the sale of Spring Sowing in consideration for payment of Five Thousand and 00/100 Dollars ($5,000.00).

5. The terms and conditions of the Agreement are memorialized in a Bill of Sale of Personal Property dated April 25, 1955. A copy of the Bill of Sale of Personal Property ("Bill of Sale") is attached hereto as Exhibit "A."

6. The Bill of Sale sets forth that Knoedler "hereby covenant[s] with the grantee that it [is] the lawful owner of the said goods and chattels; that they are free from all encumbrances that it have [sic] good right to sell same as aforesaid; and that it will warrant and defend the same against lawful claims and demands of all persons."

7. The Bill of Sale is signed under seal.

8. Prior to sale of Spring Sowing, Knoedler represented to the Springfield Museums that it maintained an expertise in the sale of Italian Renaissance paintings such as Spring Sowing.

9.  Prior to the sale of Spring Sowing, Knoedler represented to the Springfield Museums that it had examined Spring Sowing's provenance and that Knoedler maintained clear title to sell Spring Sowing to the Springfield Museums.

10. Knoedler's representations to the Springfield Museums were false whereas Knoedler was not the lawful owner of Spring Sowing and, hence, Knoedler did not maintain good title to sell Spring Sowing to the Springfield Museums.

11. On or about January 11, 1966, the Italian Government transmitted correspondence to the Springfield Museums asserting that Spring Sowing belonged to the Uffizi di Firenze. In its January 11, 1966 correspondence, the Italian Government stated, inter alia, that it was "obligated to commence every possible action to repossess the painting itself, in accordance with the laws of Italy and in the spirit of international intentions." In its January 11, 1966 correspondence, the Italian Government requested the "voluntary restitution of the painting to the Museum of the Uffizi di Firenze Gallery, which has the legitimate right to possession." A copy of the January 11, 1966 correspondence and its translation is attached hereto as Exhibit "B."

12. On or about January 17, 1966, the Springfield Museums transmitted a copy of the Italian Government's January 11, 1966 correspondence to Knoedler. In its January 17, 1966 correspondence, the Springfield Museums requested to hear from Knoedler as soon as possible in regard to any early records, you may have still retained concerning the "Bassano." In its correspondence, the Springfield Museums stated, "Certainly we should explore all possibilities as to the accuracy of [the Italian Government's] statement." A copy of the January 17, 1966 correspondence is attached hereto as Exhibit "C."

13. On or about February 8, 1966, the Springfield Museums transmitted correspondence to Knoedler stating, in part, "Thus the Uffizi painting is a much smaller version than ours." The Springfield Museums further states, "How can we save their face now?" A copy of the February 8, 1966 correspondence is attached hereto as Exhibit "D."

14. On or about February 9, 1966, Knoedler transmitted correspondence to the Springfield Museums stating, in part, "Comparing the Uffizi photograph with our own, there seems to be little doubt that they are one and the same painting. Nonetheless, there are still areas of confusion in addition to the official size as claimed by the Uffizi." In its February 9, 1966 correspondence, Knoedler poses a number of questions relating to such areas of confusion. A copy of the February 9, 1966 correspondence is attached hereto as Exhibit "E."

15. During the period February 9, 1966 to September 21, 1966, the Springfield Museums and Knoedler and the Springfield Museums and the Italian Government exchanged correspondence relating to the provenance of Spring Sowing and the Italian Government's claim.

16. In its May 24, 1966 correspondence, Knoedler states that the Italian Government has offered no valid proof "other than their word that their pictures was ever in the Embassy in Warsaw," and that "there is no evidence presented other than their mere statement, how and when the picture supposedly disappeared from Warsaw." A copy of the September 24, 1966 correspondence is attached hereto as Exhibit "F."

17. The Italian Government abandoned its claim relating to the Spring Sowing after transmittal of the Springfield Museums' September 21, 1966 correspondence.

18. On or about October 20, 2000, the Italian Government transmitted correspondence to the Springfield Museums setting forth facts asserting that <u>Spring Sowing</u> had been stolen from the Italian Embassy in Warsaw during World War II.

19. It was not until on or about October 20, 2000, at the earliest, that the Springfield Museums had a reasonable basis to believe Knoedler's representations to the Springfield Museums were false.

20. The Museum could not have learned before October 20, 2000, with reasonable diligence, of the threat to its ownership of <u>Spring Sowing</u>, and, therefore, the possibility of bringing claims against Knoedler.

21. On June 22, 2001, the Springfield Museums returned <u>Spring Sowing</u> to the Italian government.

22. Prior to June 22, 2001, the Springfield Museums had suffered no damage as a result of Knoedler's actions.

23. On or about December 14, 2001, the Springfield Museums demanded Knoedler compensate the Springfield Museums for the value of <u>Spring Sowing</u>.

24. Knoedler has refused and continues to refuse the Springfield Museums' demand for compensation.

25. The relevant statutes of limitations for the Springfield Museums' claims against Knoedler are tolled until on or about October 20, 2000, at the earliest, or until such time thereafter as the Springfield Museums learned of Knoedler's actions as complained of herein.

## COUNT I – BREACH OF CONTRACT

26. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

27. The Agreement was an unambiguous, integrated, and binding contract.

28. The Springfield Museums fully performed its obligations owed Knoedler pursuant to the Agreement.

29. Knoedler has breached the terms and conditions of the Agreement whereas it failed to ensure Spring Sowing's provenance prior to sale to the Springfield Museums.

30. Knoedler breached the Agreement by failing to ensure it was the lawful owner of Spring Sowing.

31. Knoedler breached the Agreement by failing to convey good and clear title of Spring Sowing to the Springfield Museums.

32. Knoedler breached the Agreement by failing to warrant and defend the Springfield Museums against the Italian Government's claim of ownership.

33. As a direct and proximate result of Knoedler's Breach of Contract, the Springfield Museums has suffered and continues to suffer damages.


WHEREFORE, the Springfield Museums demands judgment for Breach of Contract together with interest, costs, and such other and further relief as this court deems just and proper.

## COUNT II – BREACH OF IMPLIED WARRANTY

34. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

35. There existed an implied warranty between Knoedler and the Springfield Museums that Knoedler was the lawful owner of Spring Sowing and Knoedler was conveying good and clear title of Spring Sowing to the Springfield Museums.

36. Knoedler breached its implied warranty as aforesaid.

37. As a result of Knoedler's Breach of Implied Warranty, the Springfield Museums has suffered and continues to suffer damages.

WHEREFORE, the Springfield Museums demands judgment for Breach of Implied Warranty together with interest, costs, and such other and further relief as this court deems just and proper.

## COUNT III – FRAUD AND DECEIT

38. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

39. The Springfield Museums was deceived and wrongfully induced to rely, to its detriment, upon Knoedler's misrepresentations and misleading statements and/or omissions regarding Spring Sowing, including but not limited to representations that Knoedler was the lawful owner of Spring Sowing, that it was passing good and clear title to Spring Sowing to the Springfield Museums, and that it would warrant and defend the Springfield Museums against claims in order to induce the Springfield Museums to purchase

<u>Spring Sowing</u>.

40. The Springfield Museums' reliance was known or should have been known to Knoedler, and Knoedler made the misrepresentations hereinbeforementioned knowing them to be false and fraudulent with the intention of deceiving and inducing the Springfield Museums to rely on such misrepresentations.

41. As a result of Knoedler's misrepresentations, omissions, and fraudulent concealments, the Springfield Museums learned that Knoedler was not the lawful owner of <u>Spring Sowing</u> until in or about 2001.

42. As a direct and proximate result of Knoedler's fraudulent misrepresentations and omissions, the Springfield Museums has suffered and continues to suffer damages.

WHEREFORE, the Springfield Museums demands judgment for Fraud and Deceit together with interest, costs, and such other and further relief as this court deems just and proper.

## COUNT IV – NEGLIGENT MISREPRESENTATIONS

43. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

44. Knoedler's Negligent Misrepresentation that Knoedler was the lawful owner of <u>Spring Sowing</u>, that it was passing good and clear title to <u>Spring Sowing</u> to the Springfield Museums, and that it would warrant and defend the Springfield Museums against claims in order to induce the Springfield Museums to purchase <u>Spring Sowing</u> constitute Negligent Misrepresentation.

45. As a direct and proximate result of Knoedler's Negligent Misrepresentations and omissions, the Springfield Museums has suffered and continues to suffer damages.

WHEREFORE, the Springfield Museums demands judgment for Negligent Misrepresentation together with interest, costs, and such other and further relief as this court deems just and proper.

## COUNT V – INNOCENT MISREPRESENTATION

46. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

47. Knoedler's Innocent Mispresentations that Knoedler was the lawful owner of Spring Sowing, that it was passing good and clear title to Spring Sowing to the Springfield Museums, and that it would warrant and defend the Springfield Museums against claims in order to induce the Springfield Museums to purchase Spring Sowing constitute Innocent Misrepresentation.

48. As a direct and proximate result of Knoedler's Innocent Misrepresentations and omissions, the Springfield Museums has suffered and continues to suffer damages.

WHEREFORE, the Springfield Museums demands judgment for Innocent Misrepresentation together with interest, costs, and such other and further relief as this court deems just and proper.

## COUNT VI – BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING

49. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

50. The Agreement carries with it an implied covenant of good faith and fair dealing.

51. Knoedler's actions in breaching this Agreement, as set forth above, were undertaken in bad faith and constitute a violation of the Implied Covenant of Good Faith and Fair Dealing.

52. As a direct and proximate result, the Springfield Museums has suffered and continued to suffer damages.

WHEREFORE, the Springfield Museums demands judgment for Breach of the Covenant of Good Faith and Fair Dealing together with interest, costs, and such other and further relief as this court deems just and proper.

## COUNT VII– VIOLATION OF M.G.L. c. 93A §§ 2, 11

53. The Springfield Museums reaffirms and realleges 1-25 above as if set forth fully herein.

54. Knoedler has engaged in unfair and deceptive acts or practices proscribed by M.G.L. c. 93A §2, 11, and the Attorney General's Regulations promulgated thereunder.  As a result, the Springfield Museums has sustained and continues to sustain damages.

55. Knoedler has employed the following unfair and deceptive acts or practices in trade or commerce against the Springfield Museums, each and every one of which standing alone and/or together, constitutes a violation of M.G.L. c. 93A and each and every one of which is alleged as a separate and distinct violation of M.G.L. c. 93A:

a.  Knoedler breached the Agreement.

b. Knoedler made misrepresentations and misleading statements and/or omissions to the Springfield Museum's detriment that Knoedler was the lawful owner of <u>Spring Sowing</u>, that it was passing good and clear title to <u>Spring Sowing</u> to the Springfield Museums, and that it would warrant and defend the Springfield Museums against claims in order to induce the Springfield Museums to purchase <u>Spring Sowing</u>;

c. Knoedler made misrepresentations and misleading statements and/or omissions to the Springfield Museum's detriment that it was passing good and clear title to <u>Spring Sowing</u> to the Springfield Museums;

d. Knoedler made misrepresentation and misleading statements and/or omissions to the Springfield Museum's detriment that it would warrant and defend the Springfield Museums against claims in order to induce the Springfield Museums to purchase <u>Spring Sowing.</u>

56. As a direct and proximate result of Knoedler's Violations of c. 93A §§ 2, 11, the Springfield Museums has suffered and continues to suffer damages.


WHEREFORE, the Springfield Museums demands judgment for Violations of c. 93A §§ 2, 11 as follows:

a.   Monetary damages;

b.   Treble Damages for Knoedler's willful and knowing violations of M.G.L. c. 93A;

c.   Attorney's fees, interest and costs; and

d.   such other and further relief as this Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS SO TRIALABLE HEREIN.

SPRINGFIELD  LIBRARY  AND  MUSEUMS
ASSOCIATION, INC.

MARK D MASON, ESQUIRE
Cooley, Shrair, P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042

Dated: October 16, 2003                    BBO# 544936

## CERTIFICATE OF SERVICE

I, Mark D. Mason, Attorney for the Plaintiff, do hereby certify that I have this date served or caused to be served upon Defendant a copy of Plaintiff's Second Amended Complaint by mailing the same, postage prepaid first class mail, as follows:

> Andrius Kontrimas, Esquire
> Jenkins & Gilchrist
> 1100 Louisiana
> Suite 1800
> Houston, TX 77002
>
> Carrie M. McMann
> Jenkins & Gilchrist
> 1100 Louisiana
> Suite 1800
> Houston, TX 77002
>
>
> Kenneth W. Salinger, Esq.
> Palmer & Dodge, LLP
> 111 Huntington Avenue
> Boston, MA 02199
>
>
> Amy J. Berks, Esq.
> Palmer & Dodge, LLP
> 111 Huntington Avenue
> Boston, MA 02199

MARK D MASON, ESQUIRE

Dated: October 16, 2003

Exhibit A

# Know all Men by these presents

that M. Knoedler and Company, Inc.

in consideration of Five thousand dollars ($5,000.00)

paid by The City Library Association,  a corporation located in
Springfield, Massachusetts

the receipt whereof is hereby acknowledged, do hereby grant, sell, transfer, and deliver unto the said
City Library Association of Springfield

the following goods and chattels, namely :

Bassano, Jacopo da Ponte, Il  1510-1592
"Spring Sowing"
Oil on canvas
24 x 20 inches

COLLECTIONS:

The picture comes from Mrs. Paech, a Swiss lady in whose family
the picture had remained for a very long time.

To have and to hold all and singular the said goods and chattels to the said City Library
Association of Springfield

XXXXXXXXXXXXXXXXXX, and assigns to their own use and behoof forever.            and its successors

And/ the grantors
hereby covenant with the gra

(2 sided)

A

Exhibit B

*Roma, li 11/1/1966*

*Ministero
della Pubblica Istruzione*

IL DIRETTORE GENERALE
DELLE ANTICHITÀ E BELLE ARTI

Illustre Professore,

nel corso di una generale rico-
gnizione dei documenti riguardanti le perdite subite dal
patrimonio artistico italiano durante la guerra 1940-1945,
si è rilevato che il dipinto di Leandro Bassano, raffigu-
rante "Il Seminatore" e appartenente alla Galleria degli
Uffizi di Firenze (inv.n.1359), si trova ora al Museum of
Fine Arts di Springfield (Mass.-U.S.A.).

Il dipinto nel 1935 era stato concesso in prestito
per l'arredamento dell'Ambasciata d'Italia a Varsavia e
andò disperso durante le vicende belliche.

L'identificazione di questo dipinto fu accertata e re-
sa nota da W.Arslan, nel suo libro su I Bassano (Milano,
ediz.Ceschina, 1960, pag.269) e fu successivamente confer-
mata dalla Soprintendenza alle Gallerie di Firenze, che
possiede i documenti relativi.

Considerata la evidente appartenenza di questa opera
al patrimonio artistico dello Stato italiano, siamo in ob-
bligo di iniziare ogni azione possibile per la rivendica-
zione del possesso dell'opera stessa, secondo le leggi ita-
liane e nello spirito delle intese internazionali. E' noto
infatti che anche il Governo degli U.S.A., durante e dopo
la recente guerra, impose e facilitò la restituzione delle
opere d'arte comunque asportate dai paesi d'origine per cau-
sa della guerra stessa.

Prima di iniziare altri passi ufficiali, ho desiderato
rivolgermi personalmente a Lei per informarLa della delica-
ta questione e pregarLa di voler prendere in esame la possi-
bilità di una volontaria restituzione del dipinto alla Gal-
leria degli Uffizi di Firenze, che ne è la sola legittima
proprietaria.

./.

Confido vivamente che Ella, nello spirito di amiche-
vole collaborazione tra i Musei di tutto il mondo, voglia
favorire un accordo in tal senso, che avrebbe, tra l'al-
tro, positiva risonanza nell'opinione pubblica internazio
nale.

Comprendo il disagio che Le procuro con la notizia
della provenienza illegittima del dipinto che codesto Mu-
seo ha acquistato certamente in buona fede.

In attesa di conoscere la Sua opinione al riguardo,
La ringrazio e La prego di credere alla mia più alta con-
siderazione e gradire i miei migliori saluti.

Dr. Bruno Molajoli

Direttore Generale
delle Antichità e Belle Arti

Prof. Frederick B. ROBINSON
Direttore
Springfield Museum of Fine Arts
    49 Chestnut Street

        SPRINGFIELD (Mass)

U.S.A.

Exhibit C

11/1/66

Distinguished professor,

During the course of our general review of the documentation regarding the losses incurred to the Italian artistic patrimony (cultural assets) during the war [of] 1940-1945, it was discovered that the painting by Leandro Bassano, recognizing/[depicting] "The Sower" belongs to the gallery of the Uffizi di Firenze (name of a museum) (inv. n. 1359), which [painting] is currently located at the Museum of Fine Arts of Springfield (Mass. – U.S.A.).

The painting in 1935 was loaned to the Italian Embassy in Varsavia to furnish its offices, and was lost during the war [referenced above].

The identification of this painting was ascertained and made known by W. Arslan in his book on I Bassano (Milan, Ceschna edition, 1960, p. 269), and was subsequently confirmed by the Superintendent of the Florence Gallery, who possesses the appropriate documentation.

Considering the evident appearance [noteworthy] of this work to the Italian artistic patrimony (cultural assets), we are obligated to commence every possible action to repossess the painting itself, in accordance with the laws of Italy and in the spirit of international intentions. It is also known that even the government of the U.S.A., before and after the recent war, required and facilitated the giving back to origin countries, works of art that were exported by cause of the war itself.

Before initiating any additional official steps, I desired to personally address myself to you to inform you of the delicate question and pray that you consider the possibility of a voluntary restitution of the painting to the museum of the Uffize di Firenze, which has the legitimate right to possession.

I have strong confidence that in the spirit of the friendly collaboration between museums of the entire world, that you will favor such an arrangement, and further, that such an action will have a positive response from the international public opinion.

I understand the inconvenience that I have caused you with this news of the illegitimate origin of the painting, that your museum has certainly acquired in good faith.

While waiting for your opinion on this matter, I thank you and I pray that you believe my highest regard and welcome my best greetings.

Dr. Bruno Malajoli
Director General of the Arts

Prof. Frederick B. Robinson
Director
Springfield Museum of Fine Arts
49 Chestnut Street
Springfield (Mass) U.S.A.

January 17, 1966

Mr. E. Coe Kerr, Jr., President
M. Knoedler & Co., Inc.
14 East 57th Street
New York, New York  10022

Dear Coe:

Herewith is a photostatic copy of a letter just received from
Dr. Bruno Molajoli, Direttore Generale delle Antichita`e Belle Arti,
Ministero della Pubblica Instruzione, in Rome.  Needless to day, I will
hope to hear from you as soon as possible in regard to any early records
you may have still retained concerning the Bassano.

I think you will agree that for the time being at least we should
keep this whole question quiet.  Certainly we should explore all possi-
bilities as to the accuracy of Dr. Molajoli's statement.  Since we have
owned the painting, it has been so well publicized and exhibited in tempo-
rary exhibitions, this seems like a rather late time to bring up such a
matter.

With every good wish,

Sincerely yours,


Frederick B. Robinson
Director


fbr/gl

Enclosures 3

February 3, 1966

Mr. Helmut Ripperger, Librarian
M. Knoedler & Co., Inc.
14 East 57th Street
New York, New York  10022

Dear Mr. Ripperger:

Thank you for the copy of your letter to Dr. Becherucci of the Uffizi. It is excellent but for the fact we have just received the enclosed material, much of which you ask for in your letter. The enclosed photostat of the letter from Rodolfo Siviero listing the "Attachments" would seem to bring this matter now up to the "diplomatic" level.

In comparing the Uffizi photo sent by Siviero with Springfield's painting, the similarity is obvious; but if my figuring is correct the dimensions are not. Their painting is listed as being 49 cm x 42 cm. Our painting is 24" x 20". Thus the Uffizi painting is a much smaller version than ours.

How can we save their face now? I shall not answer Siviero's letter until I hear again from you.

Sincerely yours,


Frederick B. Robinson
Director


fbr/gl

Enclosures 5

Exhibit F

M KNOEDLER & CO.,INC.
14 EAST 57TH STREET
NEW YORK, N.Y. 10022
PLAZA 3-9742
PARIS. 85 bis FAUBOURG ST. HONORÉ
LONDON, 34 ST. JAMES'S STREET
CABLE ADDRESSES
"KNOEDLER"
NEW YORK  PARIS  LONDON

February 9, 1966

Mr. Frederick B. Robinson, Director
Museum of Fine Arts
49 Chestnut Street
Springfield 3, Massachusetts

Dear Mr. Robinson:

I feel less sanguine about the Bassano affair
after having read your letter of February 8th
and after talking with you on the telephone
this afternoon.  How lucky that I had not
sent off my letter to Dr. Becherucci.

You of course make a telling point in comparing
the size as given in the 1890 Uffizi inventory,
in the copy of the record card, and on the back
of the photograph, and finally in Mr. Siviero's
letter, namely 49 x 42 cm., with the size of
your picture, i.e. 61 x 50,8 cm.  However, we
are confronted by an entry in a 1910 Uffizi
catalogue where the size is given as 49 x 61
cm., a size that conforms with that of your
picture.

Comparing the Uffizi photograph with our own,
there seems to be little doubt that they are
both of one and the same painting.  Nonetheless,
there are still areas of confusion in addition
to the official size as claimed by the Uffizi.
If Arslan says that the Uffizi picture is now
in Springfield, without supporting his statement,
then why does he say on page 375 of the same
book that it was the picture in the Pitti Palace
which went to Springfield!  Why did Molajoli

Mr. Frederick B . Robinson - February 9, 1966 - page 2

refer to it as being by Leandro whereas Siviero
gives it to Jacopo? Why is there no mention,
of any kind, in any of the Berenson books of
the Uffizi picture? And why did the Italian
authorities wait so many years before putting
in their claim?

As I told you on the telephone, the next step
would be to write to the firm in Lucerne from
which we acquired the picture and I have now
done so. Then I think we should try and acquire
photographs of the version supposedly in the
Pitti Palace as well as the one in the Venice
Accademia, the catalogue of which (1908) gives
the size as 50 x 60 cm., which I will also
attempt. In the meantime, may I suggest that
you write to Siviero saying that in view of
certain discrepancies - size, Arslan, etc. -
you are investigating the matter further and
will write to him again as soon as possible.

So that your records may be complete, I attach
the following:

1. copy of my letter of February 9th to Mrs.
   Steinmeyer
2. copy of the page in the 1910 Uffizi cata-
   logue
3. copy of the letter from Mr. Steinmeyer to
   Mr. Henschel of September 7, 1949
4. copy of the relevant pages in the second
   edition of Arslan's I Bassano
5. copy of the reference in Muraro's article
   which appeared in the BURLINGTON,
   September 1957

I will write to you again the moment I have
further news.

                              Sincerely,

                              Helmut Ripperger
                              Librarian

HR/rhf

M. KNOEDLER & CO., INC.
14 EAST 57TH STREET
NEW YORK 22, N.Y.
PLAZA 3-9742
PARIS, 85RUE FAUBOURG ST. HONORÉ
LONDON, 34 ST. JAMES'S STREET
CABLE ADDRESSES
"KNOEDLER"
NEW YORK  PARIS  LONDON

May 24, 1966

Mr. Frederick B. Robinson
Director
Museum of Fine Arts
49 Chestnut Street
Springfield 3, Massachusetts

Dear Mr. Robinson:

Thank you very much for your letter of May 23rd in the
matter of the Bassano.

Although we knew of the correct size in the earlier
catalogue, I see that the Italians have now come upon
this as well.

Although I have a sneaking suspicion that you and I feel
that we are dealing with one and the same picture, I
for one am not yet ready to give up the ghost.

It would seem to me that despite all of their photocopies,
citations, etc., they have not yet given us any valid proof
of:

> 1. No proof, other than their word that the picture
> was ever in the Embassy in Warsaw

> 2. There is no evidence presented to us other than
> their mere statement, how and when the picture
> supposedly disappeared from Warsaw.

For the moment, I should be inclined to reserve these two
shots for a later date and concentrate on something else.

Mr. Frederick B. Robinson - May 24, 1966 - page 2

You will recall that their sole evidence, as far as I know, is their dependence on the statement in Arslan's book, the 1960 edition. I think it now time to call their attention to the facts as given by this author.

As you know, Arslan's, the only evidence produced by the Italians today as far as their picture is concerned, refers to it on page 261 where he says it was in the Uffizi and, in that entry, refers to the Springfield entry on page 269. It is there that we find all the nonsense about the picture having disappeared from Warsaw and then turning up in America. But, and this should be written capital BUT, on page 375 of the same book on which the Italians lean so heavily, Arslan says that the Springfield picture was formerly in the Pitti Palace. Why not simply ask the learned gentlemen which entry is correct?

Let us keep on fighting.

Sincerely,

Helmut Ripperger
Librarian

HR/lg