UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPRINGFIELD LIBRARY AND )
MUSEUM ASSOCIATION, INC., )
    Plaintiff )
)
)   Civil Action
v. )   No. 03-CV-30219-MAP
)
KNOEDLER ARCHIVUM, INC. f/k/a )
M. KNOEDLER & COMPANY, INC., )
    Defendant )
)

### PLAINTIFF, SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC.'S, SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, KNOEDLER ARCHIVUM, INC.'S, MOTION FOR JUDGMENT ON THE PLEADINGS

MARK D MASON, ESQUIRE
Cooley, Shrair, P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042
BBO# 544936
mmason@cooleyshrair.com

{Document=X:\DOCS\21553\9\motion\00057636.DOC;1}

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Argument | 2 |
| I. Knoedler Archivum, Inc.'s Motion for Judgment on the Pleadings Should be Denied Whereas Springfield Library and Museum Association, Inc. Has Set Forth a Claim of Equitable Estoppel | 2 |
|     A. Procedural Background | 2 |
|     B. The Doctrine of Equitable Estoppel Applies to the Within Matter | 3 |
|         1. Knoedler's Representations and Conduct Herein Amount to a Representation Intended to Induce a Course of Action Upon the Museum | 3 |
|         2. The Museum's Acts or Omissions Were in Response to Knoedler's Representations | 4 |
|         3. The Museum has Suffered Detriment as a Result of Knoedler's Acts or Omissions | 5 |
|     C. The Museum has Set Forth a Claim that Knoedler Knew or Had Reasonable Cause to Know the Consequences of Its Representations | 5 |
| Conclusion | 7 |

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPRINGFIELD LIBRARY AND ) <br> MUSEUM ASSOCIATION, INC., ) <br> Plaintiff ) <br>  ) <br> vi. ) <br>  ) <br> KNOEDLER ARCHIVUM, INC. f/k/a ) <br> M. KNOEDLER & COMPANY, INC., ) <br> Defendant ) | Civil Action <br> No. 03-CV-30219-MAP |

## PLAINTIFF, SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC.'S, SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, KNOEDLER ARCHIVUM, INC.'S, MOTION FOR JUDGMENT ON THE PLEADINGS

### ARGUMENT

I. **Knoedler Archivum, Inc.'s Motion for Judgment on the Pleadings Should be Denied Whereas Springfield Library and Museum Association, Inc. Has Set Forth a Claim of Equitable Estoppel.**

A. **Procedural Background**

At Hearing on Knoedler Archivum Inc. f/k/a M. Knoedler & Company, Inc.'s (hereinafter "Knoedler") Motion for Judgment on the Pleadings on January 26, 2004, the Honorable Magistrate Judge Kenneth P. Neiman requested the Springfield Library and Museum Association, Inc. (hereinafter the "Museum") file the within Supplemental Memorandum of Law relating to the issue of Equitable Estoppel. During such Hearing, Counsel for the Museum and Knoedler agreed that the Court may consider the Museum's Second Amended Complaint, Knoedler's Answer thereto and all documentary evidence the Museum and Knoedler submitted in support of their respective Memoranda relating to Knoedler's Motion for Judgment on the Pleadings. Further, the parties agreed that this Court should not consider Knoedler's Motion as a Motion for Summary Judgment. In view of the allegations set forth in the Museum's Second Amended Complaint, Knoedler's Answer thereto, as well as the documentary evidence presented in conjunction with the parties' respective Memoranda, the Museum has set forth a claim, inter

2

alia, for Equitable Estoppel. Knoedler's Motion for Judgment on the Pleadings should be denied, accordingly.

### B. The Doctrine of Equitable Estoppel Applies to the Within Matter.

The Museum has articulated a claim setting forth Equitable Estoppel. Massachusetts law recognizes that the "essential factors giving rise to an estoppel are ... (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission." Greenwood v. Martins Bank, Ltd. (1933) A.C. 51, 57, cited with approval in Cleaveland v. Malden Sav. Bank, 291 Mass. 295, 297-298 (1935); Industrial Bankers of Mass. Inc. v. Reid, Murdoch & Co., 297 Mass. 119, 124 (1937); Celluci v. Sun Oil Co., 2 Mass.App.Ct. 722 (1974); Boylston Development Group, Inc. v. 22 Boylston Street Corp., 412 Mass. 531, 542 (1992); Jerome J. Donovan, Third's Case; 58 Mass.App.Ct. 566, 791 N.E. 2d. 388. Otherwise stated, "In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of estoppel is not applied except when to refuse it would be inequitable." Boston & Albany Railroad v. Reardon, 226 Mass. 286, 291.

#### 1. Knoedler's Representations and Conduct Herein Amount to a Representation Intended to Induce a Course of Action Upon the Museum.

The facts alleged in the Museum's Second Amended Complaint, along with the documentary evidence before this Court, establish representations or conduct amounting to representations intended to induce the Museum to enter into a course of conduct vis-à-vis the Italian Government's request relating to Spring Sowing. Correspondence the parties and the Italian Government exchanged during the course of 1966 demonstrate that Knoedler participated

3

in decision-making as well as the approach be taken relating to the Italian Government. Knoedler did not stand idly by as the parties posed legitimate questions relating to the provenance of Spring Sowing.

For example, in response to the Museum's January 17, 1966 correspondence, a copy of which is attached to the Second Amended Complaint at Exhibit "C," Knoedler poses a number of questions relating to Spring Sowing's provenance, confirms Knoedler has written to "the firm in Lucerne from which we acquired the picture...," and sets forth a course of investigation. See Second Amended Complaint at Paragraphs 12, 13, 14 and Exhibit "E" attached thereto. In furtherance of their investigation, the Museum and Knoedler exchanged correspondence through to the Museum's September 21, 1966 correspondence. Id. at Paragraph 17. Indeed, Knoedler makes a number of representations intended to induce the Museum to pursue a particular course of conduct in its September 14, 1966 correspondence to the Museum. See Exhibit "B" attached to the Museum's Memorandum of Law in Support of its Opposition to the within Motion (hereinafter the "Memorandum"). In its September 14, 1966 correspondence, Knoedler states, "There is still an important point which we have not as yet resolved." "I have little knowledge of such things, but I feel positive that any court of law, here or abroad, would demand such evidence." Knoedler goes on to pose a number of unresolved questions relating to Spring Sowing's provenance as well as the integrity of the Italian Government's assertion.

### 2. The Museum's Acts or Omissions Were in Response to Knoedler's Representations.

In response to the inquiries Knoedler posed and the comments Knoedler made, the Museum transmitted its September 21, 1966 correspondence to the Italian Government, a copy of which is attached to the Memorandum at Exhibit "E." In its September 21, 1966 correspondence, the Museum presents Knoedler's and the Museum's concerns to the Italian Government. The Museum ratifies Knoedler's concern that the Italian Government has yet to

4

prove that "the Springfield painting is the one [the Italian Government] say[s] was in the Italian Embassy in Warsaw." Id. When the Italian Government failed to respond to the legitimate inquiry posed in the Museum's September 21, 1966 correspondence for a period of thirty-four years, the Museum took no further action. The Museum's response was borne of and as a direct result of Knoedler's representations and/or omissions relating to Spring Sowing's provenance and the Italian Government's failure to respond as a result of such inquiry

### 3. The Museum has Suffered Detriment as a Result of Knoedler's Acts or Omissions.

As a direct and proximate result of Knoedler's acts and/or omissions, the Museum has suffered damages. In this regard, on June 22, 2001, the Museum returned Spring Sowing to the Italian government. Second Amended Complaint at Paragraph 21. On or about December 14, 2001, the Museum demanded Knoedler compensate the Museum for the value of Spring Sowing. Id. at Paragraph 23. Knoedler has denied the Museum's request. Id. at Paragraph 24.

### C. The Museum has Set Forth a Claim that Knoedler Knew or had Reasonable Cause to Know the Consequences of Its Representations.

The Second Amended Complaint sets forth allegations that Knoedler knew or had cause to know that its representations would result in the consequences at issue. See Count III, Fraud and Deceit, Second Amended Complaint. Nonetheless, it is not necessary to allege deceit, bad faith or actual fraud for this Court to apply the Doctrine of Equitable Estoppel. Indeed, many of the cases wherein the Court has applied the Doctrine of Equitable Estoppel relate to defendants' assertions of the statutes of limitations. See e.g. MacKeen v. Kasinskas, 333 Mass. 695, 698 (1956). In MacKeen, the Court relied upon McLearn v. Hill, 276 Mass. 519, 524, wherein "it was said that it was not necessary to charge deceit, bad faith or actual fraud. 'Facts falling short of these elements may constitute conduct contrary to general principles of fair dealing and to the good conscience which ought to actuate individuals and which it is the design

5

of courts to enforce. It is in the main to accomplish the prevention of results contrary to good conscience and fair dealing that the doctrine of estoppel has been formulated and taken its place as a part of the law.'" Id. In McLearn, the Court held that the Defendant may be estopped from defending based upon Statute of Limitations and observed that "fraud in its strict sense is not essential to estoppel." Id. at 527. Rather "an estoppel may be created not only by 'fraud arising from an intention to mislead' but also by 'words or conduct not consonant with fairness and designed to induce action by the Plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects.'" Knight v. Lawrence, 331 Mass. 293, 295 (1954) citing McLearn, supra at 527; compare Labonte v. The New York, New Haven & Hartford Railroad Company, 341 Mass. 127, 131 (1960) citing Knight at 295 ("the words or conduct [which estop one from invoking the statute of limitations] must be such that a reasonable man would rely thereon.") For purposes of the within Motion, the Museum's reliance upon Knoedler's representations were reasonable.

To refuse application of the Doctrine of Equitable Estoppel would be inequitable. See Boston & Albany Railroad, supra, at 291. Such inequity is particularly compelling when viewed under the Rule 12 (c) standard requiring this Court to accept all factual allegations of the Second Amended Complaint as true. See Blank v. Berman, 598 F. Supp. 1081, 1083 (D. Mass. 1994).

6

## CONCLUSION

For the reasons set forth above, as well as in the Memorandum, Knoedler's Motion for Judgment on the Pleadings should be denied.

SPRINGFIELD LIBRARY AND MUSEUMS ASSOCIATION, INC.

_____
MARK D MASON, ESQUIRE
Cooley, Shrair, P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042
BBO# 544936

Dated: February 4, 2004

### Certificate of Service

I, Mark D. Mason, Attorney for the Plaintiff, do hereby certify that on February 4, 2004, I served or caused to be served upon Defendant a copy of Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings by mailing same via First Class Mail, postage prepaid, upon:

Andrius Kontrimas, Esquire
Kerry M. McMahon, Esquire
Jenkins & Gilchrist
1100 Louisiana
Suite 1800
Houston, TX 77002

Kenneth W. Salinger, Esquire
Amy J. Berks, Esquire
Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199

_____
MARK D MASON, ESQUIRE

7