UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPRINGFIELD LIBRARY AND
MUSEUM ASSOCIATION, INC.,
                                Plaintiff,

        v.

KNOEDLER ARCHIVUM, INC.,
f/k/a M. Knoedler & Company, Inc.
                                Defendant.

Civil Action
No. 03-CV-30219-MAP

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Kenneth W. Salinger (BBO #556967)
Amy J. Berks (BBO #652491)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100
ksalinger@palmerdodge.com
aberks@palmerdodge.com

*Of Counsel:*
Andrius R. Kontrimas
Texas State Bar No. 11672300
Kerry M. McMahon
Texas State Bar No. 00797053
JENKENS & GILCHRIST, P.C.
1401 McKinney, Suite 2700
Houston, TX  77010

March 15, 2004

## Table of Contents

**Page**

Introduction ................................................................................................................. 1

Summary of the Museum's Allegations .................................................................... 2

Argument .................................................................................................................... 4

    I.    THE MAGISTRATE JUDGE'S RECOMMENDATION REGARDING THE DOCTRINE OF EQUITABLE ESTOPPEL IS IN ERROR ................................................. 4

        A.    The Museum Failed to Allege Facts Sufficient to Satisfy the Minimum Requirements for Equitable Estoppel Under Massachusetts Law ................................................................................ 6

                1.    There Is No Allegation That Knoedler Either Misrepresented Any Specific Facts or That It Provided Any Specific Assurances ................................. 6

                2.    As a Matter of Law, It Was Not Reasonable for the Museum to Hold Off On Suing Knoedler in Reliance Upon the Questions and Opinions Attributed to Knoedler's Librarian ...................................................... 10

        B.    Knoedler Is Not Claimed to Have Done Anything After 1966 to Induce the Museum to Wait Almost 40 Years Before Filing Suit .......... 13

    II.    THE MAGISTRATE JUDGE ERRED IN RECOMMENDING THAT KNOEDLER'S REFUSAL TO PAY THE MUSEUM'S SETTLEMENT DEMAND IN DECEMBER 2001 COULD GIVE RISE TO A NEW BREACH OF WARRANTY IN VIOLATION OF CHAPTER 93A ..................................................................................... 14

    III.    THE MAGISTRATE JUDGE WAS CORRECT IN RECOMMENDING FINDINGS THAT THE MUSEUM'S CLAIMS ACCRUED IN 1955, AND THAT THE LIMITATIONS PERIOD MAY NOT BE TOLLED EITHER UNDER THE DISCOVERY RULE OR THE MUSEUM'S UNSUPPORTED "FRAUDULENT CONCEALMENT" CLAIM ..................................................................... 17

        A.    The Museum's Claims Accrued in 1955 and Are Not Subject to Equitable Tolling Under the Discovery Rule ........................................... 17

        B.    The Museum Failed to Allege Sufficient Facts to Support Its Fraudulent Concealment Theory .............................................................. 19

Conclusion .................................................................................................................. 20

**Introduction**

Defendant Knoedler Archivum, Inc. ("Knoedler") has moved for judgment on the pleadings on the ground that, even accepting as true all facts as alleged by plaintiff Springfield Library and Museum Association, Inc. (the "Museum") in the Second Amended Complaint, the claims asserted are barred by the statute of limitations. In 1955, the Museum paid $5,000 to buy a painting from Knoedler. In 1966, the Italian Government claimed ownership of the painting. In 2001, 46 years after purchasing it from Knoedler, the Museum gave the painting to the Italian Government. On this basis the Museum now seeks $3,000,000 in damages. The Museum's claims are too late by decades.

Judge Neiman recommends findings that the Museum's claims against Knoedler accrued in 1955, and that the 20-year limitations period (the agreement was signed under seal) would have run in 1975 because neither the discovery rule nor the Museum's unsupported and conclusory allegation of fraudulent concealment can toll the limitations period and thereby save the Museum's claims. (Magistrate's Report, at 6-11.) To that extent, Knoedler agrees with and supports the Magistrate's recommendations.

However, Judge Neiman nonetheless recommends that Knoedler's motion be denied on the grounds that: (1) it is at least possible that the Museum could "prove a set of equitable estoppel facts that will overcome Defendant's limitations argument;" and (2) the Second Amended Complaint alleges that Knoedler "took at least some untoward actions in December of 2001" by rejecting the Museum's belated demand for payment, and that this is sufficient to state a timely claim under G.L. c. 93A. (Magistrate's Report, at 15, 16.)

Knoedler respectfully objects to the recommendations regarding the doctrine of equitable estoppel and the claim under Chapter 93A, and to the concluding recommendation that Knoedler's motion be denied. Knoedler requests that this Court make a de novo determination

of those recommendations under Fed. R. Civ. Proc. 72(b), grant Knoedler's Motion for Judgment

on the Pleadings under Fed. R. Civ. Proc. 12(c), and dismiss the Museum's claims with prejudice

because they are time-barred.  The Museum's own allegations demonstrate that all of its claims

are barred by the statute of limitations.

The Magistrate's recommendations are in error with respect to the potential for equitable

estoppel on the facts alleged and with respect to the Museum's claim under Chapter 93A.  The

facts alleged, even when viewed in a light most favorable to the Museum, fall well short of

satisfying the minimum requirements for equitable estoppel.  They also fall well short of making

out any claim under Chapter 93A that would not be time-barred.  Knoedler is therefore entitled

to judgment on the pleadings in its favor.

### Summary of the Museum's Allegations

In 1955, the Museum paid $5,000 to buy a painting by Jacopo de Ponte Il Bassano (the

"Painting") from Knoedler.  (Document No. 13, Second Amended Complaint, ¶ 4 & Ex. A.)

The bill of sale stated that Knoedler was "the lawful owner" with "good right" to sell the

Painting, and that it would "warrant and defend the [Museum] against lawful claims and

demands of all persons."  (*Id.* Ex. A.)  The Museum claims that Knoedler breached its warranty

of good title.  (Magistrate's Report, at 6; *see also* Document No. 13, Second Amended

Complaint, ¶¶ 26-56).

On or about January 11, 1966, the Italian Government wrote to the Museum claiming that

the Painting belonged to the Uffizi museum, had been loaned to the Italian Embassy in Warsaw,

Poland, and was lost during World War II after Germany invaded Poland.  (Magistrate's Report,

at 2.)  The Italian Government stated that it was prepared to bring an action to repossess the

Painting, and asking the Museum to return it voluntarily.  (Document No. 13, Second Amended

Complaint, ¶ 11.)

The Museum notified Knoedler of the Italian claim by letter dated January 17, 1966, in which the Museum's Director requested all records of the Painting's provenance, and stated:

> I think you will agree that for the time being at least we should keep this whole question quiet. Certainly we should explore all possibilities as to the accuracy of Dr. Molajoli's statement. Since we have owned the painting, it has been so well publicized and exhibited in temporary exhibitions, this seems like a rather late time to bring up such a matter.

(*Id.* ¶ 12 & Ex. C.)  The Museum also sought and received further information from the Italian Government, including a photograph from when the Painting had hung in the Uffizi.  On or about February 8, 1966, the Museum forwarded these materials to Helmut Ripperger, Knoedler's librarian. (*Id.* Ex. D.)  In so doing the Museum acknowledged that "the similarity" between the Italian photo and the Painting "is obvious," but pointed out that the dimensions claimed by Italy were "much smaller" than the actual dimensions of the Painting.  (*Id.* Ex. D.)

In a response dated February 9, 1966, Ripperger explained to the Museum that the smaller size cited by the Italian Government was probably a mistake, since "we are confronted by an entry in a 1910 Uffizi catalogue where the size is given as 49 x 61 cm., a size that conforms with that of your picture."  (*Id.* Ex. E.)  He added that,

> "Comparing the Uffizi photograph with our own, there seems to be little doubt that they are both of one and the same painting.  Nonetheless, there are still areas of confusion in addition to the official size as claimed by the Uffizi."  (*Id.* Ex. F.)

Ripperger posed a number of questions as to the previous locations of the Painting claimed by the Italian Government.  (*Id.* Ex. E.)

Between February and September 1966, the Museum corresponded further with the Italian Government asking for proof of its claim to the Painting, and also corresponded further with Knoedler about the claims by Italy.  (*Id.* ¶ 15.)  In a letter to Knoedler dated April 22, 1966, the Museum reiterated its intent to "play a very quiet game."  (Document No. 3, Answer, Ex. H.)  On May 24, 1966, Ripperger wrote to the Museum's Director that, "Although I have a sneaking

- 3 -

suspicion that you and I feel that we are dealing with one and the same picture, I for one am not yet ready to give up the ghost." (Document No. 13, Second Amended Complaint, Ex. F.) He observed that the Italian Government had not yet provided evidence of the circumstances leading to the disappearance of the Painting after 1935, and concluded by saying, "Let us keep on fighting." (*Id.* Ex. F.) On September 2, 1966, the Museum sent Ripperger the latest letter from Italy regarding its claim to the Painting. Ripperger responded on September 14, 1966. He encouraged the Museum to seek "positive proof has been presented to you that the picture was actually in the Italian Embassy in Warsaw," stating that "I have little knowledge of such things, but I feel positive that any court of law, either here or abroad, would demand such evidence." (Magistrate's Report, at 12.)

For unknown reasons, the Italian Government made no further efforts to obtain the Painting until October 2000, when it again wrote and requested the Painting. (Document No. 13, Second Amended Complaint, ¶ 18.) On June 22, 2001, the Museum voluntarily gave the Painting to Italy. (*Id.* ¶ 21.) The Museum did not contact Knoedler until on or about December 14, 2001, when it made a demand on Knoedler for the alleged present value of the Painting. (*Id.*, ¶ 23.) Knoedler rejected the Museum's 2001 demand. (*Id.*, ¶ 24.)

<u>**Argument**</u>

I.  **THE MAGISTRATE JUDGE'S RECOMMENDATION REGARDING THE DOCTRINE OF EQUITABLE ESTOPPEL IS IN ERROR.**

The facts alleged, even when viewed in a light most favorable to the Museum, fall well short of satisfying the minimum evidentiary requirements for equitable estoppel. The "doctrine of estoppel is not applied except where to refuse it would be inequitable." *Boston & A.R.R. Co. v. Reardon,* 226 Mass. 286, 291 (1917). Here, in contrast, a finding that Knoedler's statute of

limitations defense might be equitably estopped upon the allegations made by the Museum would constitute a radical and inequitable departure from existing precedent.

In evaluating Knoedler's motion for judgment on the pleadings, this Court may not allow the Museum to rest on unsupportable inferences to maintain its action almost thirty years too late. For the Museum to defeat the statute of limitations, its claim of equitable estoppel must be pled with sufficient facts. *See Campagna v. Mass. Dept. of Environmental Protection,* 334 F.3d 150, 155 (affirming Rule 12(b) dismissal, noting that "[a] plaintiff must allege facts in support of 'each material element necessary to sustain recovery…'") (quoting *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989)). Although at this initial stage of the case the Museum's factual assertions must be accepted as alleged, its complaint may not rest on "'unsubstantiated conclusions,' … 'subjective characterizations' or conclusory descriptions of 'a general scenario which could be dominated by unpleaded facts.'" *Coyne v. City of Somerville,* 972 F.2d 440, 444-445 (1st Cir. 1992) (affirming dismissal) (quoting *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 51 (1st Cir. 1990)). To the contrary, "the factual allegations must be specific enough to justify 'drag[ging] a defendant past the pleading threshold.'" *DM Research Inc. v. College of American Pathologists*, 170 F.3d 53, 55 (1st Cir.1999) (affirming dismissal) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). As the First Circuit has observed, this requirement that a complaint identify factual support for a plaintiff's allegations and not rely on unsupported conclusions makes sense because "rising litigation costs (and the associated impact of an improper threat of litigation) speak for requiring some specificity" before permitting discovery and litigation to proceed, and because "the burgeoning caseload crisis in the district courts weighs in favor of earlier disposition of baseless claims." *Boston & Maine Corp. v. Town of Hampton*, 987 F.2d 855, 865 (1st Cir. 1993).

**A.    The Museum Failed to Allege Facts Sufficient to Satisfy the Minimum Requirements for Equitable Estoppel Under Massachusetts Law.**

"In the present context – forfeiture of the defendant's right to repose [from a statutory limitations period] – estoppel boils down to the idea that 'the conduct of the defendant must be so misleading as to cause the plaintiff's failure to file suit.'" *Clauson v. Smith*, 823 F.2d 660, 662 (1st Cir. 1987) (quoting Sanchez v. Loffland Bros. Co., 626 F.2d 1228, 1231 (5th Cir. 1980)); *accord Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 63 (1st Cir. 1998). Proof of equitable estoppel to assert a statute of limitations defense is sometimes stated as requiring proof that: (1) the defendant made representations that it knew or should have known would induce the plaintiff to postpone bringing a suit; (2) the plaintiff did in fact delay bringing a suit in reliance on those representations; and (3) reliance on those representations was reasonable. *Kozikowski v. Toll Bros., Inc.,* 354 F.3d 16, 24 (1st Cir. 2003). As discussed below, the Museum has failed to state allegations sufficient to make out either the first or the third of these elements.

**1.    There Is No Allegation That Knoedler Either Misrepresented Any Specific Facts or That It Provided Any Specific Assurances.**

Where a plaintiff claims that the defendant should be equitably estopped from asserting the statute of limitations, one required element is that the defendant either made a misleading misrepresentation of fact or provided misleading assurances sufficient to lull the plaintiff "into the false belief that it was not necessary for him to commence action within the statutory period of limitations." *Ford v. Rogovin*, 289 Mass. 549, 552, 194 N.E. 719, 720 (1935).

The Museum has not identified any representations made by Knoedler that could possibly give rise to equitable estoppel. Judge Neiman suggests that the Museum may have relied upon letters by Knoedler's librarian questioning whether the Italian Government had put forth facts sufficient to prove its claim to the Plaintiff. (Magistrate's Report, at 12-13.) But, as Judge Neiman correctly found in another context, merely asking for additional information regarding

- 6 -

threatened claims cannot result in a party being equitably estopped from relying on a statute of limitations. *Safe Environment of America, Inc. v. Employers Ins. of Wausau*, 278 F.Supp.2d 121, 127-128 (D.Mass. 2003) (Neiman, M.J.); *accord Gen. Ins. Co. of America v. United States ex rel. Audley Moore & Son,* 406 F.2d 442, 444*, reh. denied,* 409 F.2d 1326 (5th Cir. 1969); *see also Riverdale Mills Corp. v. Fireman's Fund Ins. Co.*, 123 F.Supp.2d 37, 40 (D.Mass. 2000) (granting summary judgment on ground that insurer's continued investigation of claim did not constitute a representation that could give rise to equitable estoppel of limitations defense).

Judge Neiman suggests that Knoedler may have gone further, perhaps even recommending to the Museum that it need not worry about threats from Italy unless and until the Italian Government could provide better support for its claim. (Magistrate's Report, at 12-13.) But, even read in this light most favorable to the Museum, the questions raised by Knoedler's librarian about the strength or weakness of Italy's claims cannot give rise to equitable estoppel.

As a matter of law, assurances regarding what a third party may or may not do cannot support an equitable estoppel claim. *See Ford v. Rogovin*, 289 Mass. at 550-553, 194 N.E. at 719-720. The plaintiff in *Ford* brought suit for injuries suffered due to the defendant's negligent operation of an automobile. 289 Mass. at 550, 194 N.E. at 719. There was evidence that the defendant made assurances that he "would see to it that his insurance company would settle the case," that "the plaintiff need not worry," and "that the insurance company would take care of the amount of his damage." 289 Mass. at 551, 194 N.E. at 720. The plaintiff claimed that on this basis the defendant should be equitably estopped from asserting the statute of limitations as a defense. The Supreme Judicial Court disagreed. It held that the defendant never made any assurances specific enough to form the basis of equitable estoppel. The Court concluded that since there were no "assurances that the defendant would settle the case himself if the insurance company did not, or assurances that he had authority to bind the insurance company to make a

settlement or power to compel it to do so," as a matter of law the defendant could not be

equitably estopped from asserting his limitations defense.  289 Mass. at 552-553, 194 N.E. at 720

(affirming directed verdict for defendant on this ground).

Similarly, in the present case the Museum makes no allegation that Knoedler ever

provided any assurance that it would make the Museum whole if Italy continued to come after

the Painting, or provided any other assurance a suit against Knoedler would not be necessary.

Rather the Magistrate's Report relies on qualified opinions by Knoedler's librarian regarding the

Italian Government's claim against the Museum – none of which addresses potential claims by

the Museum against Knoedler.

"[M]ere statements of opinion or belief" cannot give rise to equitable estoppel.  *Rodowicz*

*v. Mass. Mut. Life Ins. Co.*, 192 F.2d 162, 178 (1st Cir. 1999).  The Report incorrectly states that

Knoedler's librarian "told" the Museum "not 'to give up the ghost.'"  (Magistrate's Report, at

12.)  In fact, in the referenced letter, Knoedler's librarian offers only his own qualified opinion

stating, "I for one am not ready to give up the ghost."  (Document No. 13, Second Amended

Complaint, Exhibit F, letter dated May 24, 1966).  The same is true of the September 14, 1996,

letter in which Ripperger encouraged the Museum to seek "positive proof" that "the picture was

actually in the Italian Embassy in Warsaw," stating that "I have little knowledge of such things,

but I feel positive that any court of law, either here or abroad, would demand such evidence."

(Magistrate's Report, at 12.)  Ripperger's "feelings" or opinions about the future prospects of

any formal claim by the Italian Government do not constitute affirmative representations that

could give rise to equitable estoppel.  *Rodowicz*, 192 F.2d at 175-176.  Furthermore, an

"expression of an opinion on a question of law … would not operate as an estoppel."  *Goldstein*

*v. Tucker*, , 230 Mass. 259, 262, 119 N.E. 693, 694 (1918).

Even if Ripperger's opinions could be read as an attempt to reassure the Museum that the Italian Government was highly unlikely to succeed on its claim to the Painting, that would still be insufficient to support the Museum's equitable estoppel claim.  As a matter of law, Ripperger's expressions of hope that the claims threatened by the Italian Government may never materialize did not constitute affirmative representations which could result in Knoedler being equitably estopped from asserting its statute of limitations defense.  *Livens v. William D. Witter, Inc.*, 374 F.Supp. 1104, 1107-1108 (D Mass. 1974) (Garrity, J.) (holding that it was "practically frivolous" for plaintiff to claim that defendant's "expressions of hope and belief" that circumstances could develop in a way to eliminate claimed injury constitute representations that can give rise to equitable estoppel of statute of limitations defense).

Indeed, even general assurances which go further, to suggest that a defendant is working to resolve a plaintiff's claims, are not enough to constitute "representations" under the first prong of the equitable estoppel test.  *Kozikowski*, 354 F.3d at 24 (affirming summary judgment for defendant on ground that letters indicating plans to resolve problems with a new home were not clear assurances that those plans would be carried out, and thus could not give rise to estoppel in the absence of a specific assurance that suit against the defendant would not be necessary).  "Promises or assurances … must be specific in order to constitute 'representations.'"  *Id.*

In sum, since the Museum is unable to identify any specific assurance by Knoedler that a suit against it by the Museum would be unnecessary, there is no representation sufficient to give rise to equitable estoppel.  The general statements of opinion or belief and the related questions raised in the letters from Knoedler's librarian are even further away from being affirmative representations than the statements held not to constitute representations in *Kozikowski, Livens*, or *Ford v. Rogovin*.

2.     **As a Matter of Law, It Was Not Reasonable for the Museum to Hold Off On Suing Knoedler in Reliance Upon the Questions and Opinions Attributed to Knoedler's Librarian.**

Even if the questions raised by Knoedler's librarian were sufficiently definite to constitute affirmative representations, which they were not, the facts alleged by the Museum could not support a finding that it was reasonable for the Museum to rely upon any of the statements allegedly made by Knoedler as a reason to delay its claims against Knoedler.  *Cf. Kozikowski*, 354 F.3d at 25 (affirming summary judgment rejecting equitable estoppel claim on ground that undisputed facts showed that claimed reliance was unreasonable as a matter of law.)

The third prong of the test for equitable estoppel requires that the defendant's words or conduct must be such that the plaintiff's reliance thereon is "reasonable."  *Pagliarini v. Iannaco*, 440 Mass. 1032, 1032, 800 N.E.2d 696, 698 (2003); *Ford v. Rogovin*, 289 Mass. at 553, 194 N.E. at 720.  This requires, among other things, that the Museum was "ignorant of the true facts," and that Knoedler knew but withheld key facts unknown to the Museum.  *Benitez,* 136 F.3d at 63; *Clauson*, 823 F.2d at 661.  In other words, in order for reliance to be reasonable "the party claiming the estoppel" must be able to allege and then prove that it "did not know nor should it have known that its adversary's conduct was misleading.'"  *Benitez*, 136 F.3d at 63 (affirming grant of summary judgment), quoting *Heckler v. Community Health Servs*., 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984)).  "If, at the time when he acted, such party had knowledge of the truth, or ... with reasonable diligence he could acquire the knowledge ... he cannot claim to have been misled by relying upon the misrepresentation or concealment."  *Id.*

Here, there is no allegation that Knoedler knew anything about the potential claims by the Italian Government that was not also known by the Museum.  To the contrary, all of the claims by Italy were made directly to the Museum.  All of the questions raised by Knoedler's librarian about those claims were similarly raised with the Museum.  Since according to its own

allegations the Museum "had *actual* knowledge of all the facts giving rise to [its] injury," as a matter of law Knoedler may not be equitably estopped from asserting its statute of limitations defense. *Emory v. Logan*, 801 F.Supp. 899, 902 (D.Mass. 1992) (Zobel, J.) (granting summary judgment).

Furthermore, the explicit conflict between the claims by the Italian Government and the questions raised by Knoedler's librarian about those claims made it "unreasonable as a matter of law" for the Museum to have relied upon Ripperger's opinion. *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 33-34 (1st Cir. 1988) (affirming summary judgment on promissory estoppel claim); *accord Sands v. Ridefilm Corp.*, 212 F.3d 657, 664-665 (1st Cir. 2000) (affirming summary judgment on promissory estoppel claim); *Benitez-Pons*, 136 F.3d at 63-64 (affirming summary judgment against claim that defendant should be equitably estopped from asserting statute of limitations defense).

> Confronted by such conflict a reasonable person investigates matters further; he receives assurances or clarification before relying. A reasonable person does not gamble with the law of the excluded middle; he suspends judgment until further evidence is obtained. <u>Explicit conflict engenders doubt, and to rely on a statement the veracity of which one should doubt is unreasonable.</u> The law does not supply epistemological insurance. Nor does it countenance reliance on one of a pair of contradictories simply because it facilitates the achievement of one's goal.

*Trifiro*, 845 F.2d at 33-34 (emphasis added).

*Knight v. Lawrence*, 331 Mass. 293, 118 N.E.2d 747 (1954), further demonstrates the heavy burden faced by plaintiffs seeking to estop a statute of limitations defense. The plaintiff in *Knight* offered evidence that the defendant's insurance adjuster promised on several occasions, "Don't worry, we are going to take care of you," and further, specific assurances to the plaintiff that she "didn't need to do anything about [her] case, that they would settle it." *Id.* at 748. On appeal, the Court held that estoppel would not be permitted in the absence of a representation

sufficient to "suggest to the plaintiff that it would not be necessary for her to commence an action in order to preserve her rights." *Id.* at 749. It indicated that the defendant's first general statement of "don't worry, we are going to take care of you," could "hardly be said to be representations which would justify the plaintiff in delaying the bringing of her action." *Id.* Only when coupled with the more specific statement about litigation that the plaintiff "didn't need to do anything about her case," was there sufficient evidence upon which estoppel might be found. *Id.* Even with the specific assurance that the plaintiff did not need to sue the defendant in order to be taken care, the Supreme Judicial Court still characterized the plaintiff's evidence as being "close to the line." *Id.* It would be far less reasonable for a plaintiff to rely on inferences drawn from Knoedler's statements such as "Let us keep on fighting" than it would be to rely on the more express, *but still inadequate*, assurances such as the *Knight* defendant's "Don't worry, we are going to take good care of you." *Knight*, 331 Mass at 296, 118 N.E.2d at 749; *see also Ford,* 289 Mass. at 551, 194 N.E. at 720.

The correspondence from Knoedler's librarian to the Museum repeatedly acknowledges the likelihood that the Painting bought by the Museum and the painting sought by the Italian Government were "one and the same." (Document No. 13, Second Amended Complaint, Exs. E & F, letters dated February 9 and May 24, 1966.) By encouraging the Museum to seek further information from the Italian Government regarding the circumstances under which it lost the Painting, Knoedler's librarian was putting the Museum on notice that it would have to deal with Italy's claims. Since there is no allegation that Knoedler ever promised to take responsibility for resolving the Italian Government's's claims, but instead encouraged the Museum to attempt to do so on its own, it was unreasonable as a matter of law for the Museum to rely upon its communications with Ripperger as grounds for not asserting potential claims against Knoedler. *See Kozikowski,* 354 F.3d at 25-26.

B.    **Knoedler Is Not Claimed to Have Done Anything After 1966 to Induce the Museum to Wait Almost 40 Years Before Filing Suit.**

There is a further, independent reason why Knoedler may not be equitably estopped from asserting its statute of limitations defense.  "Equitable estoppel will not apply if a reasonable time remains within the limitations period for filing the action once the circumstances inducing the delay have ceased."  *Pagliarini*, 440 Mass. at 1032, 800 N.E.2d at 698.  Knoedler objects to Judge Neiman's conclusion that the Museum did not need to allege additional actions by Knoedler after 1966 that continued to lull the Museum into not filing suit.  *See* (Magistrate's Report, at 13-14.)

The Museum argues that questions raised by Knoedler in 1966 may form the basis for equitable estoppel.  But it makes no allegation that Knoedler continued to engage in any "inducing conduct" after 1966.  At that point in time the Museum still had approximately nine years to file timely claims.  Since the Museum still had plenty of time to act after 1966, as a matter of law Knoedler may not be equitably estopped from obtaining the proper benefit of the statutory limitations period.  *See Deisenroth v. Numonics Corp.*, 997 F.Supp. 153, 157 (D.Mass. 1998) (Saris, J.) (statute of limitations defense not waived where defendant did not "gull" plaintiff by making representations regarding settlement throughout entire limitations period; discussions had ceased at least one year before expiration of three-year statute of limitations); *Ford v. Rogovin*, 289 Mass. 549, 553, 194 N.E. 719, 720 (1935) (where all statements on which estoppel claim was based were made within two months of accrual of cause of action, "there were no words or conduct of the defendant calculated to lull the plaintiff into security" during the remaining 10 months of the limitations period, defendant could not be equitably estopped from asserting its statute of limitations defense).

Judge Neiman did not accept this argument because he believed that this principle applies only to equitable tolling, not to equitable estoppel, and that the two doctrines are "quite distinguishable." (Magistrate's Report, at 14.) He is mistaken. *Pagliarini*, *Deisenroth*, and *Ford* are all equitable estoppel cases, not equitable tolling cases. Each of these decisions held that a defendant could not be equitably estopped from asserting a statute of limitations defense where the conduct alleged to give rise to the estoppel ended long before the running of the limitations period. Under Massachusetts law, equitable estoppel – even where proven – does not suspend the running of the limitations period for all of eternity.

## II.    THE MAGISTRATE JUDGE ERRED IN RECOMMENDING THAT KNOEDLER'S REFUSAL TO PAY THE MUSEUM'S SETTLEMENT DEMAND IN DECEMBER 2001 COULD GIVE RISE TO A NEW BREACH OF WARRANTY IN VIOLATION OF CHAPTER 93A.

Judge Neiman correctly found that the Museum "will be unable to recover for any unfair or deceptive act that occurred prior to chapter 93A's effective date," which was in March 1968. (Magistrate's Report, at 16.) However, he mistakenly concluded that the Museum's Chapter 93A claim encompasses the refusal by Knoedler to pay the Museum's $3 million settlement demand in December 2001. (*Id.*) In this he was incorrect.

The Museum's claim under Mass. G.L. c. 93A is based solely and explicitly on its allegation that Knoedler breached the provisions of the 1955 Bill of Sale which represented that Knoedler owned and was passing good and clear title to the Painting, and that Knoedler would warrant and defend the Museum against claims regarding the Painting. (Document No. 13, Second Amended Complaint, ¶ 55.) Chapter 93A was enacted in 1967 and became effective on March 26, 1968, thirteen years after the 1955 sale of the Painting. *See* Mass. St. 1967, c. 813. Chapter 93A affects substantive rights and as such can not be applied retroactively. *Lewis v. Ariens Co.*, 434 Mass. 643, 650, 751 N.E.2d 862, 868 n.19 (2001) (manufacturer who produced and sold snow blower before Chapter 93A were enacted was not liable with regard to second-

hand purchaser who was injured 22 years after snow blower was manufactured); *Commonwealth v. De Cotis*, 366 Mass. 234, 244 n.8, 316 N.E.2d 748, 755 n.8 (1974). Since the Painting was sold in 1955, thirteen years before the effective date of Chapter 93A, as a matter of law Chapter 93A does not apply to the facts of this case. *Id.*

Knoedler's unwillingness to pay the Museum's belated settlement demand in December 2001 could not give rise to a claim under Chapter 93A, for at least two reasons.

First, as discussed in Section III.A. below, under Massachusetts law claims for such a breach of warranty accrue at the time of contract formation and are not subject to any discovery rule. Thus, the alleged breach of warranty upon which the Museum basis its Chapter 93A claim accrued in 1955. The Museum does try to circumvent the statute of limitations on its breach of warranty claims by asserting that Knoedler's refusal to accede to the Museum's December 2001 demand for payment constitutes an independent violation of duty, separate and apart from the alleged sale in 1955 of a painting which Knoedler had incorrectly thought it owned. *See* Museum's Opposition to Defendant's Motion for Judgment on the Pleadings, at 8. That assertion fails as a matter of law.

> Plaintiff's argument is in essence that by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period. The fallacy of this approach is apparent. If we adopted plaintiff's position, limitations periods could be extended for virtually infinite time. We doubt that the Legislature intended such a result.

*New England Power Co. v. Riley Stoker Corp.*, 20 Mass. App. Ct. 25, 31, 477 N.E.2d 1054, 1058 (1985) (affirming summary judgment, holding that promise to "repair and make good" was not an independent warranty), quoting *Centennial Ins. Co. v. General Elec. Co.*, 74 Mich. App. 169, 172, 253 N.W.2d 696 (1977). Knoedler's warranty to defend the Museum as to any claims regarding the Painting is a "specification[] of a remedy" for any breach of the warranty of good title, and not an "independent or separate warranty." *Id.* Under Massachusetts law, any claim

for breach of Knoedler's warrant to defend accrued at the time of sale in 1955, and the Museum cannot create new breaches that would restart the running of the limitations period merely by making new demands for payment. *Id.* Since the Museum's 93A claim is premised on breach of warranty claims that are themselves time-barred, it too must be dismissed. *Rosario v. M.D. Knowlton Co.*, 54 Mass. App. Ct. 796, 803, 767 N.E.2d 1126, 1133 (2002) (affirming summary judgment).

Second, even if the Museum could bring a timely contract claim on the ground that Knoedler's rejection of the Decmeber 2001 settlement demand was a new breach of warranty, which it cannot, that would be insufficient as a matter of law to form the basis of any claim under Chapter 93A. "[A] mere breach of contract, without more, does not amount to a c. 93A violation." *Madan v. Royal Indemnity Co.*, 26 Mass.App.Ct. 756, 762, 532 N.E.2d 1214 (1989). The "failure to perform obligations under a written [contract], even though deliberate and for reasons of self-interest, does not present an occasion for invocation of c. 93A remedies." *Atkinson v. Rosenthal*, 33 Mass.App.Ct. 219, 226-27, 598 N.E.2d 666 (1992); *see also, e.g., Community Builders, Inc. v. Indian Motorcycle Assocs., Inc.*, 44 Mass.App.Ct. 537, 559, 692 N.E.2d 964 (1998); *Framingham Auto Sales, Inc. v. Workers' Credit Union,* 41 Mass. App. Ct. 416, 418, 671 N.E.2d 963 (1996). In sum, Knoedler's unwillingness in December 2001 to pay $3 million to settle claims regarding the 1955 purchase of a painting for $5,000 is insufficient grounds for a 93A claim.

**III. THE MAGISTRATE JUDGE WAS CORRECT IN RECOMMENDING FINDINGS THAT THE MUSEUM'S CLAIMS ACCRUED IN 1955, AND THAT THE LIMITATIONS PERIOD MAY NOT BE TOLLED EITHER UNDER THE DISCOVERY RULE OR THE MUSEUM'S UNSUPPORTED "FRAUDULENT CONCEALMENT" CLAIM.**

**A. The Museum's Claims Accrued in 1955 and Are Not Subject to Equitable Tolling Under the Discovery Rule.**

Judge Neiman correctly found that the Museum's claims accrued in 1955, and that the discovery rule does not apply. (Magistrate's Report, at 8-9.) As discussed below, claims for breach of a contract for sale accrue, and the limitations period begins to run, at the time the good is sold. No discovery rule applies. The Museum cannot get around this rule of law by attempting to stylize some of its counts as tort claims. All of the Museum's claims, however labeled, sound in contract and are time-barred under this rule.

Judge Neiman correctly concluded that all of the Museum's clams are "varied expressions of contractual breaches of warranty." (Magistrate's Report, at 6.), at 6. It is well settled that where, as here, the only claimed damages are to recover alleged economic loss, and there is no claimed personal injury or damage to property, the only available claims are "contract-based" and no recovery is permitted in tort. *Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 107, 533 N.E.2d 1350, 1353 (1989). Thus, the same limitations period applies to all of the Museum's claims, including those stylized as tort or statutory claims. *Wilson v. Hammer Holdings, Inc.,* 671 F.Supp. 94, 96-97 (D. Mass. 1987) (Caffrey, J.), *aff'd*, 850 F.2d 3 (1st Cir. 1988) (claim that gallery was negligent in not realizing that painting it sold to plaintiff was a forgery actually sounded in contract, as a breach of warranty claim). "In choosing the correct limitations period [a court must] look to the essential nature of the action, not its form." *Solomon v. Birger*, 19 Mass. App. Ct. 634, 639, 477 N.E.2d 137, 142 (1985).

Judge Neiman was also correct in concluding that no discovery rule applies to a breach of warranty claim, and thus that the Museum's claims all accrued in 1955. (Magistrate's Report, at 8-9.) *See Wilson v. Hammer Holdings*, 671 F.Supp. at 96-97, *aff'd*, 850 F.2d at 6-7 (injury of the kind claimed here "occurred when the painting was purchased"). Under the common law in effect in Massachusetts as of the 1955 sale to the Museum, the limitations period on a claim that the defendant sold something to which it did not have proper title began to run at the time of the sale, and was not subject to tolling under a discovery rule. *Boston Towboat Co. v. Medford Nat'l Bank*, 232 Mass. 38, 121 N.E. 491 (1919) (claim that two promissory notes and an order transferring shares of stock were forged held to be time-barred because the statute of limitations began to run as soon as the notes and stock were conveyed); *Perkins v. Whelan*, 116 Mass. 542 (1875) (holding that a claimed "breach of the warranty of title implied in the sale of [a] horse … occurred at the time of the sale, and the right to sue therefore then accrued," and that it was "immaterial" that the plaintiff's claimed "to have no knowledge of any defect in his title" until after the limitations period had run).

Even if the discovery rule did apply, however, the Museum's own allegations make clear that it was aware of its alleged injury no later than 1966, when the Italian Government demanded return of the Painting. The discovery rule "operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured." *Patsos v. First Albany Corp.*, 433 Mass. 323, 328, 741 N.E.2d 841, 846 (2001). This rule applies only when the facts of a claim were "inherently unknowable," *i.e.* only until a plaintiff "knew or should have known" of its cause of action. *Albrecht v. Clifford,* 436 Mass. 706, 714, 767 N.E.2d 42, 49 (2002). Since the Museum has affirmatively alleged that it became aware of its injury in 1966, the 20-year limitations period would have run out in 1986 even if a discovery rule applied to beach of warranty claims, which it does not. It is not necessary that a plaintiff understand or

know all the details of either the injury or the cause of the injury for the statute of limitations to begin to run. *Bowen v. Eli Lilly & Co., Inc.,* 408 Mass. 204, 208, 557 N.E.2d 739, 742 (1990) (requiring either knowledge or "sufficient notice" of a harm and its cause); *White v. Peabody Constr. Co., Inc.,* 386 Mass. 121, 130, 434 N.E.2d 1015, 1020 (1982). ("The 'notice' required is not notice of every fact which must eventually be proved in support of the claim."). The Museum had sufficient notice of its claims in January 1966 when it first learned there was a potentially valid claim to ownership of the Painting.

**B.** **The Museum Failed to Allege Sufficient Facts to Support Its Fraudulent Concealment Theory**

Judge Neiman was also correct in finding that the Museum's conclusory assertion of fraudulent concealment is insufficient to toll the limitations period because it is not supported by any allegation of specific facts sufficient to show that Knoedler acted to fraudulently conceal the Museum's cause of action. (Magistrate's Report, at 9-11.)

The doctrine of fraudulent concealment will only toll the statute of limitations where two conditions are met:

> First, the defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts related to the wrongdoing. Second, the plaintiff must have failed to discover these facts within the normal limitations period despite his or her exercise of due diligence.

*Gonzalez v. United States*, 284 F.3d 281, 292 (1st Cir. 2002). The Museum had to "plead with particularity" specific facts sufficient to show both concealment and its "due diligence in trying to uncover the facts." *Gonzalez-Bernal v. United States*, 907 F.2d 246, 250 (1st Cir. 1990).

Here, the Museum admits that in 1966 it was contacted by the Italian Government and given actual notice of the facts upon which the Museum now relies in asserting claims against Knoedler. Since the Museum had actual knowledge of those facts, it cannot claim that Knoedler fraudulently concealed the Museum's potential cause of action against Knoedler. *E.g., Levin v.*

*Berley*, 728 F.2d 551, 555 (1st Cir. 1984); *White v. Peabody Constr. Co., Inc.,* 386 Mass. 121, 133-134, 434 N.E.2d 1015, 1022-1023 (1982).

### <u>Conclusion</u>

For the reasons set forth above, all the claims brought by the Museum are barred by the applicable statutes of limitations and must be dismissed. The Court should accept those portions of the Magistrate Judge's recommendations which find that the Museum's claims accrued in 1955 and are not subject to tolling either under the discovery rule or under a theory of fraudulent concealment. The Court should reject those portions of the recommendations which nonetheless find that the Museum may be able to make out a claim that Knoedler should be equitably estopped from asserting its statute of limitations defense, and which recommend that Knoedler's rejection of the Museum's December 2001 settlement demand could give rise to a timely claim under Mass. G.L. c. 93A. Knoedler respectfully urges the Court to enter judgment on the pleadings dismissing all of the Museum's claims on the ground that they are time barred.

KNOEDLER ARCHIVUM, INC.

By its attorneys,

_____/s/ Kenneth W. Salinger_____
Kenneth W. Salinger (BBO #556967)
Amy J. Berks (BBO #652491)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100
ksalinger@palmerdodge.com
aberks@palmerdodge.com

*Of Counsel:*
Andrius R. Kontrimas
Texas State Bar No. 11672300
Kerry M. McMahon
Texas State Bar No. 00797053
JENKENS & GILCHRIST, P.C.
1401 McKinney, Suite 2700
Houston, TX  77010

March 15, 2004

**CERTIFICATE OF SERVICE**

I, Amy J. Berks, attorney for Knoedler Archivum, Inc. in this matter do hereby certify that in accordance with Fed. R. Civ. P. 5(b), on March 15, 2004, a copy of Defendant's Objections to the Magistrate Judge's Report and Recommendation on Defendant's Motion for Judgment on the Pleadings was served by mail on the attorney of the opposing party.

Signed under the pains and penalties of perjury this 15th day of March, 2004.


　　　　　　　　　　　　　　/s/ Amy J. Berks　　　　　　
　　　　　　　　　　　　　Amy J. Berks