# FANTASTIC TRANSCRIPTS

59 TEMPLE PLACE #660
BOSTON, MA 02111
617-451-1807
www.fantastictranscripts.com
e-mail: info@fantastictranscripts.com

## CERTIFICATE

I, Susan Gellerman, do hereby certify that the following pages, numbered 1 through 57, embody a true and accurate transcript. Prepared under my direction by Fantastic Transcripts to the best of our abilities, it includes the designated portions of the CD encoded in the For The Record tamper proof format provided to me by Kenneth W. Salinger, Attorney at Law. The trial or hearing was held at the United States District Court for the District of Massachusetts, Western Division in Springfield MA in the case of Springfield Library and Museum Association, Inc. v. Knoedler Archivum, Inc., before Judge Kenneth P. Neiman on January 26, 2004, Docket Number 03-CV-30219.

Susan Gellerman, President
Fantastic Transcripts

Date

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.    1
KNOEDLER ARCHIVUM, INC.

1       - (inaudible) 03-30219, Springfield Library and Museum Association versus

2       Knoedler Archivum.

3

4    J:     OK, (inaudible) please be seated. If you could state your name, I'll start on to my

5       right, please?

6

7    MASON: Good afternoon, Your Honor, Mark Mason for plaintiffs, Springfield Library

8       and Museum Association, Incorporated.

9

10   J:     OK.

11

12   SALINGER: Good afternoon, Your Honor. Ken Salinger for defendant, Knoedler

13       Archivum.    With me is Andrea Centiro.

14

15   J:     OK. This matter has been referred to me by Judge Ponsor for a, um, Court

16       recommendation with regard to the, uh, defendant's motion for judgment on the

17       pleadings.   And let me, uh, ask a couple of preliminary, uh, matters here. As I

18       understand the procedural history, there was a complaint filed, then the motion for

19       judgment on the pleadings was filed. There was an answer filed. Then the motion

20       for judgment on the pleadings was filed. And then there was a motion, uh, to

21       amend the complaint, uh, which I allowed without opposition. Uh, and I guess, uh,

22       my first question is, uh, a very practical, uh, question. I'm assuming that the

23       motion for judgment on the pleadings is directed at the second amended - that -

24       this first amended complaint, if you will, and not - and no longer the amended

25       complaint. Is that fair to say?

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    2
KNOEDLER ARCHIVUM, INC.

1

2    SALINGER: That's correct, Your Honor.

3

4    J:    OK. And the second part of that question is, uh, I noticed - and I - I didn't do a

5          chart, but I noticed that in the - that there were more documents, if you will, cited

6          in this - in the amended complaint than there were in the original complaint. And I

7          noticed that in the answer to the amended complaint, there were no documents

8          attached, as - as there had been in response to the first complaint. And I guess my

9          question is why - why is that. Uh, particularly in the context of the motion for

10         judgment on the pleadings, I have to look at something, was it because, in part at

11         least, that the amended complaint included certain allegations that quoted

12         sufficiently from some of the documents which were part of the defendant's first

13         answer and you didn't need to repeat those or etc., etc.?

14

15   SALINGER: In - in short, yes, Your Honor. The second amended complaint quotes from

16         - and attaches to it, incorporates in it, uh, I believe it's five different letters. Those

17         are the majority of the letters that we had attached to the original answer. The let -

18         the correspondence attached to the second amended complaint, in and of itself, is

19         sufficient to show the defendant's claims are time barred. And so in an effort to,

20         uh, keep things relatively simple, we felt at that point there was no need to attach

21         further correspondence to the answer to the second amended complaint.

22

23   J:    But are there - if I were to read the complete - first amended complaint first,

24         together with the answer there, together, and then if I were to go and look at your

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.     3
KNOEDLER ARCHIVUM, INC.

1          answer to the first amended complaint, would I see things there in the documents

2          that you attached that -

3

4     SALINGER: Oh -

5

6     J:      - that's not part of the factual information, if you will, that's been presented to me

7          in the context of the amended complaint and the answer?

8

9     SALINGER: There would be -

10

11    J:      Because there are cert - there are certain documents, I know, that - that don't seem

12         to be before me, if you will -

13

14    SALINGER: I - I believe that there were two additional letters that had been attached to

15         the original answer to the amended complaint -

16

17    J:      Something having to do with things that happened in February, I believe -

18

19    SALINGER: Yes.

20

21    J:      - in 2000 or thereabouts?

22

23    SALINGER: Yes. Urn, what you would see if you just looked at the attachments to the

24         current complaint, the second amended complaint, are the - the documents showing

25         that the painting was bought in 1955, the key aspects of the 1966 correspondence

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.        Pg.    4
KNOEDLER ARCHIVUM, INC.

1      making clear that, uh, the museum was on notice as of January of 1966 that the

2      Italian government wanted this painting sent to it. Uh, there are - one, two, three -

3

4    J:    So - so - OK, go ahead.

5

6    SALINGER: Uh, four different 1966 letters attached there, and um, you would see on the

7          face of the complaint itself, uh, that in those letters, uh, the museum said, uh, let -

8          let's just keep this quiet. In essence, let's hope it blows over and -

9

10   J:    But it said a lot of things. So - but - but is what you're saying is that you didn't

11         need to, um, refer to certain, uh, documents which you had attached to your original

12         answer because that concerned events that occurred in 2000 which don't deal with

13         the - the more, um, particular issue that's before - before the Court, namely the

14         statute of limitations issues around 1966, etc.?

15

16   SALINGER: That's - that's fair. Once the complaint was amended a second time, it then

17         incorporated enough of the documentary history that there really was no need, for

18         purposes of this motion, to present any additional information, and it seemed, uh,

19         cleaner to rely on the plaintiff's own attachments to its own second amended

20         complaint at that point.

21

22   J:    OK. Now do you - would you have any objection if somehow I found it

23         appropriate to make reference to some of these other documents in the course of

24         examining whatever it is that I need to examine here, to examine those documents

25         in the context of this motion? I mean, I - I - because I - I don't know exactly what

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.      Pg.    5
KNOEDLER ARCHIVUM, INC.

1    I might be missing, uh, and I - the second part of that is, um, do you believe in

2    essence that this is really a motion and I should treat it as a motion for summary

3    judgment and the standards around summary judgment, rather than the standards of

4    the - on Rule 12? Um, because I may be looking at documents that are outside the

5    narrow confines of the amended complaint and the answer to the amended

6    complaint, namely something that might be in the answer to the first amended - the

7    first complaint.

8

9    SALINGER: If I may, I'll take those questions in reverse order.

10

11   J:    OK.

12

13   SALINGER: Uh, we're asking the Court to treat this not as a summary judgment motion,

14        and we do so primarily, Your Honor, because we don't want to, and we haven't so

15        far, but we don't want to be in a situation where the plaintiff says, oh Judge, we -

16        we need discovery in order to respond to that.  We think that would not be

17        appropriate, we mean it's clear on the face of the pleadings that these claims are

18        time barred and that the defendant should not have to go any further in this

19        litigation.  That said, give the particular, uh, sequence of pleadings that have been

20        filed, we certainly would have no objection, Your Honor, uh, to the Court treating

21        all of the attachments to any of the pleadings as part of the pleadings that can be

22        considered by Your Honor in ruling on the motion for judgment on the pleadings.

23

24   J:    But the Rule 12 - but still under Rule 12?

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    6
KNOEDLER ARCHIVUM, INC.

1    SALINGER: Yes.

2

3    J:    (inaudible) go ahead.  Mr. Mason, your views on - on that - those series of

4    questions having to do with what's before me, what the standards are, etc.?

5

6    MASON: Certainly. We anticipated those questions, and indeed I raised the very first

7    question that you posed on the review on the - to Palmer Dodge. Amy Berks is the

8    associate on this matter, and he contacted (inaudible) some clarification, where I

9    honestly expected a renewed motion for judgment on the pleadings once this Court

10    had endorsed the second amended complaint. In that regard, assuming we can

11    proceed, but the, uh - the motion sitting before you and the memorandum before

12    you, as well as its opposition, all referred to a pleading which is the first amended

13    complaint, which is a nullity at this point. Um, and we think all referred to the

14    second amended complaint and its answer. But you don't have, um, any of the

15    written materials, so to speak, that relate to the second amended complaint and its

16    answer before you. Having raised that issue, I was assured that, um, Knoedler, um,

17    intended to go forward as we are going forward today. Um, I simply -

18

19    J:    Well, what - what I'm being told, though, by Mr. Sal - um, Salinger is that he does

20    in - indeed intend for me to be making reference to whatever materials there are in

21    the second - in the - in the amended complaint. And I guess what you're saying,

22    maybe, the - the opposite. Since the - I - I can, in fact, view everything that's been

23    filed in - with respect to answering the original complaint, because that's what the

24    motion is directed at, and therefore the answer to that, and that with the consent of

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    7
KNOEDLER ARCHIVUM, INC.

1        the parties, I can also look at whatever other documents have been proffered in the

2        context of the amended complaint.

3

4    MASON: Well, I concur with your assessment, and on the - my, uh, full counsel's

5        acknowledgement, that the motion is directed to the second amended complaint.

6        That's the (inaudible) of the Court. As such, all the documentation that is

7        referenced in the second amended complaint is before you. That's how I perceive

8        it.  My simple point is that as a matter of the written briefs that you have before

9        you, they relate to a different stage of the pleadings.

10

11   J:      I understand. But - but as - OK, so we -

12

13   MASON: And it's (inaudible).

14

15   J:      - we have an agreement, uh, it - it would appear that I can look at the documents

16       that are both complaints and answers, in essence. The second question, though,

17       now is the standard here to - to be used. You may have taken on, perhaps, a more -

18       do - do you believe that it's under Rule 12 or under Rule 56, and are you trying to

19       avoid - or Mr. Salinger, what you in fact did say, uh, which is that there - at least in

20       the first, um, prong of an argument is that it's not, um - the Court's not - recog -

21       can't rule on it because you need to discover the material?

22

23   MASON: Yeah that's a (inaudible) concern that, um, but we raised the first few on the

24       question we did not want (inaudible) on rule 56 on this (inaudible). Uh, so in that

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    8
KNOEDLER ARCHIVUM, INC.

1     regard, we agree to this through a (inaudible) motion and a 12C standard applies to

2     this matter for the exact reasons that, um, Attorney Salinger has articulated.

3

4    J:    But you still argue that - when - when had you filed your opposition? Had you

5     filed your opposition prior to filing your amended complaint?

6

7    MASON: Uh, yes.

8

9    J:    OK. So at that point, your argument - one of your arguments was that there were

10     issues of fact remain in dispute, right?

11

12    MASON: That's correct.

13

14    J:    And - and judgment on the pleadings is inappropriate?

15

16    MASON: That's correct.

17

18    J:    Now - has that argument gone by the wayside in light of the fact that you have, uh

19     - that you amended your complaint that added certain documents and -

20

21    MASON: (inaudible) it's been enhanced, actually, um, and it was not our perspective that

22     we needed to, um, set forward the complaint with the level of sophisticate that we

23     now have done so. And um - and certainly I would apologize to the Court if - if

24     the standard were otherwise. It was not our intention to mislead as has been

25     suggested.  Um, but - but there are genuine (inaudible).

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.     9
KNOEDLER ARCHIVUM, INC.

1

2    J:      You still believe that, is what I'm saying?

3

4    MASON: Yes, absolutely.

5

6    J:      You still believe that?

7

8    MASON: Absolutely.

9

10   J:      Now, let me also say that there are certain things, even if I were to look at the

11           documents, all the documents, that there are references to yet other documents that

12           I do not have -

13

14   MASON: Yes, that's correct.

15

16   J:      Uh, some other correspondence between the parties, I believe, and in addition to

17           that, uh - for example, I think there was a draft letter that was being - that was -

18           there was a letter which the museum believed had been sent by the gallery - by -

19           by the art dealer to the Italian government. And then subsequently, it was made

20           clear that that letter had never been sent. And I think the - the response was, oh

21           thank goodness we didn't send that, or something like that. But I don't have a copy

22           of that letter. I don't have a copy of some other correspondence, and I don't have a

23           copy of, uh, correspondence from the Italian government. There are certain things

24           absent from the record, and I - I'm saying the defendant feels that that's not

25           necessary for the Court to rule on this particular motion, but I just want to say is

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.                     Pg.    10
KNOEDLER ARCHIVUM, INC.

1          that correct? That - that there are certain things that I don't have here that

2          somehow I've missed?

3

4     MASON: Absolutely. Uh, and those (inaudible) excellent questions.

5

6     J:     Let me ask, uh, another question of you, Mr. Mason before we go to the, uh,

7            underlying argument. You have a - you have seven, um, counts here, uh, and all

8            with perhaps a variety of statutes of limitations -

9

10    MASON: That is correct.

11

12    J:     Urn, but is it - is it your position that all of them relate to the original contract,

13           namely the bill of sale, the 1955 is it?

14

15    MASON: All except for the 93A claim, which relates to the demand made on October 4',

16           value of the painting, which was set forth on December 14, 2001. I believe with

17           Deborah Basile? (sp?)

18

19    J:     But - but does that not in turn relate to -

20

21    MASON: Yes, it does. But the 93A count itself draws its cause of action from that 2001,

22           that certainly acknowledged that 93A, um, existed in 1955.

23

24    J:     The - basically the failure to pay?

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.     11
KNOEDLER ARCHIVUM, INC.

1    MASON: That - that's correct.

2

3    J:     And - and let me just ask as a - as a matter - as an aside here, the three - there's a

4          $3 million claim that was made, and is - is that because that was deemed to be the

5          value of the painting in 2000?

6

7    MASON: Correct (inaudible)

8

9    J:     Where does that come from?

10

11   MASON: I think it was an appraisal which was done, um, prior to the painting being

12          turned over to the Italian government, and that was in 2001.

13

14   J:     I think - I think those are my, uh, preliminary questions. Um, Mr. Salinger, to your

15          motion.

16

17   SALINGER: Thank you, Your Honor.

18

19   J:     You - you also understand that this has been referred to me, the full report and

20          recommendation. You have the right - I'll just -just put this out there. You have

21          the, uh - or you have two rights. You have - you have many more rights than the

22          two that I've mentioned (inaudible) here. If you want, you also have the right to

23          have this matter - for me to exercise jurisdiction, but there'd have to be consent of

24          both parties.  Uh, and short of the - that would deal with the entire matter. And

25          short of that, you also have the - the right to jointly, uh, agree, uh, for me to have

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    12
KNOEDLER ARCHIVUM, INC.

1   jurisdiction over this particular question without the remaining case, if you will, uh,

2   uh, being under my jurisdiction. And if you desire to exercise mutually either one

3   of those, (inaudible) approaches here, then you should be in touch with the, uh, the

4   Clerk's Office. But in the meantime, at this particular point, it's Judge Ponsor's

5   case, and I've just been asked to do the Court recommendation. Mr. Salinger?

6

7   SALINGER: Thank you, Your Honor. As you already know, it's our position that the

8   claims in this case are time barred. The, uh, overview is that these claims, uh,

9   whether they are stylized as contract claims or court claims or otherwise, really are

10  all breach of warranty claims, which accrued at time of the sale of this painting in

11  1955.  And the simplest way to deal with this, Your Honor, is you do not even need

12  to reach application of the discovery rule. If you were, nonetheless, to consider the

13  discovery rule, however, um, it is now clear from the second amended complaint

14  that the plaintiff had adequate notice, uh, that there may be a claim here as of

15  January of 1966, almost 40 years ago. Deliberately did nothing, uh, besides to keep

16  quiet in hopes that the Italian government would just go away. Um, and then, uh,

17  40 years later, almost 50 years after the sale of the painting, now brings this claim -

18  uh, these claims. They are barred by that statute of limitations.

19

20  Uh, Your Honor, there are, uh, a few authorities that I - I'd like to discuss. I've

21  already shared a copy of these, uh, with Mr. Mason, and with your permission I'd

22  like to hand up a few items that -

23

24  J:    OK.

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.      Pg.    13
KNOEDLER ARCHIVUM, INC.

1    SALINGER: (inaudible) people (inaudible) to have it at hand. And I'll just first tell you

2        what's in here, and then I'll explain why I'm handing it to you. The top piece is

3        cited in our brief around Page 13, and it is the one case in this district, uh, on

4        similar facts regarding the, uh, timing, uh, for claims of this kind regarding the

5        provenance of a painting to be brought. The second item is the first -

6

7    J:        (inaudible) the Wilson?

8

9    SALINGER:    *Wilson vs. Hammer Holdings,* that's right. So first, you have the District

10        Court decision, then you have the First Circuit decision on appeal. The third item

11        is a UCC statute of limitations that's discussed in this case. Uh, the fourth item is a

12        1989 Supreme Judicial Court decision, (inaudible) Spray, which deals with the

13        same UCC statute of limitations. Uh, 1955 was actually a few years before the

14        UCC was adopted in Massachusetts, and so it technically does not apply. And so

15        the last two items are common law cases predating the UCC, which make the same

16        point.

17

18        And the point, uh, made in all of this authority, Your Honor, which is alluded to in

19        our 45 (sp?) I'd like to develop a little more fully this afternoon, is that claims for

20        breach of contract, including claims, as in this case, for breach of warranty -

21        remember, attached to the second amended complaint is this bill of sale, and a big

22        part of the plaintiff's theories is that Knoedler, back in *1955,* it said that it

23        warranted and would defend the, uh, validity of the title of the painting. So this is,

24        at its essence, a breach of warranty case.

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.     14
KNOEDLER ARCHIVUM, INC.

1      Breaches of warranty, those causes of action, Your Honor, uh, all of these cases tell

2      us, accrue at the time of breach, regardless of whether the aggrieved party had a

3      knowledge of the breach at that time. Uh, that's what was held in Hammer

4      Holdings, that's what this UCC statute of limitations expressly states. And for the

5      purposes of this case, what's actually controlling is that was a common law prior to

6      adoption of the UCC. That was the common law in Massachusetts in 1955. And

7      both the, uh, Boston Towboat Case and the Perkins Whaling Case, uh, make clear

8      that a breach of warranty claim accrues at the time of sale. It does not accrue later

9      at the time that a claim is discovered. It does not accrue at the time the damage

10     occurs.  Rather, it accrues at the time that there is sale of property, uh, even if it is

11     later on that some question regarding the validity of the title arises.

12

13     The other thing that these cases establish, Your Honor, is that a - a plaintiff in the

14     position of the museum, in this case, cannot abate this fact, the accrual of a breach

15     of warranty claim by stylizing claims that sound as if they are in tort. Uh, these

16     cases, including the First Circuit's decision in Hammer Holdings, which the

17     Supreme Judicial Court expressly agreed with, and the subsequent Bay State Case,

18     which is why I've handed that up, Your Honor, uh those cases hold that, uh, among

19     other things, there cannot be a tort claim for purely economic loss of this kind. And

20     in any case, if somebody brings something that sounds like it's a claim in

21     negligence, but it really involves a claim that you sold me something, you claimed

22     you had title to it and could convey it and you were wrong, no matter how you

23     stylize the complaint, for purposes of applying the statute of limitations, all of those

24     claims must be treated as a breach of warranty claim. And for all of those claims,

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.     15
KNOEDLER ARCHIVUM, INC.

1       there is no discovery rule, and the cause of action accrues at the time of sale. That

2       was 1955.

3

4       Even if it could be shown - and there's the possibility of this on the face of the bill

5       of sale - even if it could be shown that this - that this contract was made under seal,

6       the longest possible limitations period is 20 years. If the cause of action accrued in

7       1955, then the claim needed to be brought by 1975. We're a few decades too late.

8       Now the bulk of our - our brief, as you know, uh, deals with the even more

9       generous reading, which would be an erroneous reading, but the even more

10      generous, to the plaintiff, reading of the law, the possibility that, uh, discovery rule

11      could apply.

12

13  J:  Well, let - let me just say, I mean why - you're - you're arguing this - this point

14      now, but if it's so obvious in terms of, uh, I mean - the - the complaint here, and

15      I've read all the various, you know, the various (inaudible), and there's certainly a

16      breach of implied warranty, there's breach of contract, fraud and deceit, negligent

17      misrepresentation, innocent misrepresentation, implied, you know, breach of, uh -

18      implied covenant of good and fair dealing. You're now saying, well, for the first

19      time that this is - has nothing to do with being a contract case, this is a warranty

20      case.  And if it was so obvious, why are you bringing this up kind of later in the

21      process? Uh, why wouldn't this -

22

23  SALINGER: We -

24

25  J:  - have not been as obvious to you when you wrote your motion?

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    16
KNOEDLER ARCHIVUM, INC.

1

2      SALINGER: Your Honor, we - we should have made it clearer in our papers earlier, and

3            I apologize for not doing so. Frankly, we looked at the, uh, age of the sale,

4            predating UCC.   We looked at all of the case law arising under the UCC and

5            realized that it - it did not directly govern this case. And we also realized that, um,

6            if a discovery rule were applied and the case still went away, uh, then in a sense it

7            didn't matter, uh, if we could make the argument that the cause of action, uh, was a

8            contract claim that accrued at the time, uh, of the sale in 1955.

9

10     J:    But if you - if you had to look at the, uh - you know, at the bill of sale, now that

11           you're raising this, is that, um, you're selling the - a painting, representing it being

12           something, and um, and you're doing that in consideration of $5,000. That seems

13           to be the contract.

14

15     SALINGER: Yes, Your Honor.

16

17     J:    OK. Then in addition to that, OK, it says - perhaps - and I'm just looking -

18           looking at this through the - with the new viewpoint that you're raising, and is that

19           the grantor is hereby covenant. Um, that it has good right to sell it and that it will

20           warrant and defend the sale (inaudible). So maybe there's a warranty aspect to it as

21           well. It doesn't mean - it doesn't necessarily mean that there's not a contract as

22           well.

23

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.      Pg.    17
KNOEDLER ARCHIVUM, INC.

1    SALINGER: Oh, Your Honor, whether it's stylized as a - as a warranty claim or a

2        contract claim, we - we agree. A warranty cl - claim would be a form of a contract

3        claim, whether it's an ex - explicit -

4

5    J:    No, but I'm saying if - if you - if you didn't even have the warranty language here,

6        isn't there a contract claim that - that remains?

7

8    SALINGER: And that contract claim accrued in 1955.

9

10   J:    No, I understand - well - well, no. Now you're saying something different. Now

11       I'm just trying to follow your argument. Your argument, I thought you were

12       saying, had to do with warranty claims. If everything is a breach of warranty claim,

13       then you're going through that there's no way - unless your argument goes both to

14       contract claims and warranty claims, but that there's no way for the museum to get

15       out from under the 1955 date - that's the accrual date - that discovery doesn't even

16       apply to that. And that the, uh - that it runs - it's accrued at that time, and - and

17       the statute of limitations starts to run at that particular point. And you're doing that

18       to get out from any applicability of the discovery rule.  Wasn't that your argument?

19

20   SALINGER: Yes. The only - the only quibble, Your Honor, is I was not trying to

21       distinguish warranty claim from contract claim. Um, they're - they're both

22       contract claims, so they would both be treated the same for purposes of accrual.

23

24   J:    But - but aren't - doesn't the discovery rule also apply not only to torts but to

25       contracts?

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.    18
KNOEDLER ARCHIVUM, INC.

1

2    SALINGER: The - the nature of the contract claim here, Your Honor, though, is a breach

3        of warranty claim. The - the contract, uh, claim is that, uh, Knoedler said that it

4        had good title to this painting. Uh, that was the representation, and that was - was

5        incorrect, uh, claims the plaintiff.   And in being incorrect, that's a breach of

6        contract.   Well, Your Honor, that's - that's just another way of phrasing a warranty

7        claim.   Um, Your Honor, by the way, we would, if - if it's of assistance to the

8        Court, be happy to reduce, um, this - this new gloss, shall we say, on Hammer

9        Holdings to - to writing after oral argument or -

10

11   J:    I'll - I'll - yeah, I'll - I'll consider that. But um - OK. But you're going to your

12        next argument, which is assuming that the - that the discovery rule applies, so let's

13        go there.   You've indicated that the discovery would have occurred in 1966?

14

15   SALINGER: Correct, Your Honor.

16

17   J:    When the claim was being made by the Italian, uh, government?

18

19   SALINGER: Correct, Your Honor.

20

21   J:     OK, go ahead.

22

23   SALINGER: It was in January of 1966 that the museums first received a letter from the

24        Italian government, uh, saying -

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.     19
KNOEDLER ARCHIVUM, INC.


1   J:      Well actually, let me interrupt you. I'm sorry. One moment.

2

3   SALINGER: Sure.

4

5   J:      And it - it relates to what you - where you -the time period that you're talking

6           about, which is - if I were to assume that this was under seal, OK - it says it's

7           under seal.  Assume that for the moment. Then for a contract claim, it's a 20-year

8           statute of limitations, is that correct?

9

10  SALINGER: Yes, Your Honor.

11

12  J:      Does that also apply to the warranty?

13

14  SALINGER: We believe it would, Your Honor.

15

16  J:      OK. Go ahead.

17

18  SALINGER: And so -

19

20  J:      So 1966 arises, you have a letter, and we're in this 20-year period. Go ahead.

21

22  SALINGER: If the claim accrued, as we say it did, in 1955, we're in the -

23

24  J:      Correct.

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.
KNOEDLER ARCHIVUM, INC.                                    Pg.    20

1    SALINGER: - correct of a 20-year period.

2

3    J:        Correct.

4

5    SALINGER: Our altern - alternative argument is that even if there were discovery rule

6              that hold the running of the statute until adequate discovery of the possibility of a

7              claim, that moment occurred in January of 1966.   And so if the - the limitations

8              period has not been running prior to then, it started to run then, and of course, uh,

9              under our theory, it ran out no later than January of 1986, still long before this suit

10             was brought. Um, in January of 1966 -

11

12   J:        All right, January of '86.   20 years.

13

14   SALINGER: 20 years. That's the longest possible and most generous reading to the

15             plaintiff, (inaudible).

16

17   J:        OK.

18

19   SALINGER: This January of 1966 letter requested voluntary restitution of the painting.

20             Um, the Italians said it's ours, give it back, you don't have good title to it.

21

22   J:        Correct.

23

24   SALINGER: And uh, the museums understood right away that they had an issue with

25             Knoedler, because the first thing they did a few things after receiving the letter -

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    21
KNOEDLER ARCHIVUM, INC.

1     and now we're moving on to Exhibit C, to the second amended complaint - uh, the

2     museums wrote Knoedler and specifically asked Knoedler to keep this whole

3     question quiet. They knew they had a problem. They hoped it would go away.

4     There were some back and forth, some questions that Mr. Mason tries to make

5     much of in his opposition, questions about, well, how do we know that the painting

6     the Italian government is referring to is really this painting.

7

8     J:      Wait, who - who says this?

9

10    SALINGER: Uh, this - these were, uh, in the correspondence attached at Exhibits C, D,

11         and E to the second amended complaint, Your Honor.

12

13    J:      (inaudible) a second. Right, but C is that original letter, and - and uh, D is - is, uh

14         - I (inaudible) these. D is the letter, uh, that files - was filed shortly on the heels of

15         that to Knoedler.

16

17    SALINGER: And E is a response from Knoedler to the museum.

18

19    J:      Well, E, I actually have two - E, I have, uh, a copy of another letter from the

20         museum to Knoedler. And F is from - is the response, the very nice response.

21

22    SALINGER: In - in the form that this was served on me, Your Honor, and we seem to be

23         looking at different compilations, um, Exhibit C is a January 17, 1966 letter to

24         Knoedler from the museum -

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    22
KNOEDLER ARCHIVUM, INC.

1    J:    Now what - what are you looking at?

2

3    SALINGER: The second amended complaint.

4

5    J:    All right, well let's get - let's get that on board here, because we need to know

6         exactly what I have. And if you could look at your complaint. The complaint in

7         Court, OK, the original complaint in Court, A is the bill of sale. And this is - this

8         is what I'll be using, OK? A is the bill of sale. Uh, B is a loose (inaudible),

9         November 1, 1966. This is -

10

11    SALINGER: Actually -

12

13    MASON: No, no. January 11 `h.

14

15    SALINGER: January 11'h.

16

17    J:    That's right.   We're in Europe there. January 11', 1966. This is the letter that, um,

18         that I have. Then what I have - and this is where something may have gone awry -

19         is I have - C is the trans - I have Exhibit C -just telling you what's in here. C is

20         the translation of that letter.   OK, let's just move along and you can always tell me

21         - D is the January 17' letter from Mr. Robinson, Professor Robinson to, uh, Mr., uh

22         - well, it says here Coe" - oh, that's his first name. Uh, to Mr. Kerr, and that's -

23         that's what I have as D. E is a - oh, this is what happened, OK. E is the February

24         8'h letter, and F - the February 8`h letter from Mr. Robinson to, uh, Mr. Ripperger

25         (sp?) of Knoedler. F, I have a February 9 h letter -

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    23
KNOEDLER ARCHIVUM, INC.

1

2    SALINGER: And that should be it (inaudible) -

3

4    J:    - to Mr. Robinson from Mr. Ripperger. And then part of this - that's F. And - and

5    part of F, with (inaudible), is a May 24' letter from Mr. Ripperger back to Mr.

6    Robinson. That's what I have. Now am I - putting aside mislabeled, do I have

7    every - all the letters that are there?

8

9    SALINGER: Yes.

10

11   J:    OK, so this - OK, go ahead.

12

13   SALINGER: I will work off of your tabs. Your tabs don't quite match the text of the

14   second amended complaint itself, but let's use the references on your tabs.

15

16   J:    OK, go ahead.

17

18   SALINGER: Um, and so let me just back up a little bit, because I was inadvertently

19   confusing you since I had different tabs. Urn, tab D is the January 17th letter -

20

21   J:    Correct.

22

23   SALINGER: - and so that was just a few days after the museums - uh, the museum heard

24   from the Italian government. The museum clearly knew that it had a - an issue

25   with Knoedler because it immediately wrote Knoedler and asked Knoedler to keep

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    24
KNOEDLER ARCHIVUM, INC.

1      this whole question quiet. February 8"', your tab E, Your Honor, at this point the

2      museum, uh, acknowledges in writing to Old - Knoedler that the similarity is

3      obvious, meaning the similarity between the painting that the museum has, this

4      Bassano, and the Bassano that the Italian government says it wants back.

5

6    J:    Now let me just - sticking with this letter, I - I'm not being asked to look at this,

7          OK, and I don't know if it exists, but wouldn't it be informative to know what it

8          was that, um, Mr. Ripperger had, uh, drafted, uh, as a letter to Dr. - to Dr., uh, uh,

9          Becheruci of - of the, uh, Uffizi Museum? Because it's mentioned here and then

10         it's mentioned, uh, again, uh, in the February 9' letter, that he said, um, how lucky

11         that I had not sent off my letter to Dr. Becheruci. I don't have that, so I don't know

12         what's going on there. You don't believe that that's necessary?

13

14   SALINGER: No. No, Your Honor. Though I, of course, share your curiosity about it,

15         uh, the Court does not need to make any findings about those facts in order to

16         decide this issue.  As we discuss in our brief, um, if the discovery rule applied here,

17         uh the museum did not have to understand or know all of the details of an injury or

18         all of the details of a possible cause of action in order for the statute of limitations

19         to begin to run. It merely needed to know enough to realize it had a potential claim

20         that it had better investigate.  And here, what you do have in front of your - you,

21         Your Honor, is sufficient to show, uh, that the museum was in that position

22         because, uh, in fact, the first thing that it did is it started to investigate. It wrote

23         Knoedler and asked Knoedler to provide more information. Um, so we know on

24         the face of this correspondence, as incorporated into the plaintiffs own second

25         amended complaint, that the museum knew enough that - to start investigating.

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.    25
KNOEDLER ARCHIVUM, INC.

1

2          And uh, the - the point I was making before we got a little bollocked up on the

3          tabs, was that even at this early stage in February of 1966, it had become obvious,

4          first to the museum and then Knoedler wrote back confirming this, uh, in the - in

5          the next letter in this sequence, Your Honor, your tab F, um, Knoedler confirms

6          that there seems to be little doubt that they are one and the same painting. So again,

7          it was obvious to the museum, which wrote it down, and to Knoedler, which

8          confirmed it in writing back to the museum, that the painting sold by Knoedler to

9          the museum was the very painting that the Italian government was seeking back.

10

11    J:    I think - I think that you're picking and choosing a bit here. I mean I - it doesn't

12          totally undermine the argument that - that the - that the museum was aware that

13          there was a serious problem here. I - I'm - I'm in agreement on that. Uh, but I

14          don't think that, uh, at this moment in time that you could say that Knoedler is

15          responding, um, in - in quite the, uh, pure way that - that you're indicating, that

16          indeed it is. I mean, that both, uh, this - there are still areas of confusion in

17          addition to the official size, and then it goes - then it goes on with that. So there

18          are certain things that Knoedler is telling the museum at this moment in time, um,

19          uh, that is, um - well - so they speak for themselves, these letters, don't they.

20          Everybody seems to claim that, but there's other things that are said here that are

21          simply it is that you need to return it. OK? And uh, we'll send you your  $5,000 or

22          whatever we (inaudible) - what was the value of the (inaudible) painting? Does

23          anybody have an idea of what the value of the painting was in '66 as distinct from

24          1955?

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    26
KNOEDLER ARCHIVUM, INC.

1    SALINGER: I'm not aware that there had been an appraisal done at that point in time.

2

3    J:    OK. All right, go ahead.

4

5    SALINGER: Uh, though the Hammer Holdings case certainly suggests that if there were

6          a live claim, the relevant value would be the value at time of sale, but we're not

7          going to reach that, I submit -

8

9    J:    OK.

10

11   SALINGER: - because of the limitations problem.

12

13   J:    OK, go ahead.

14

15   SALINGER: Um, and - and I should be clear, Your Honor, your point is well taken about

16          what's in the letter. So I should be clear about what our position is so I don't take

17          on more of a burden of proof than we have. All we need to do in order to show that

18          the - this claim - that these claims are time barred is show that the museums knew,

19          uh, that they had a big problem that they needed to investigate. Once -

20

21   J:    Well, at this moment in time - and I may be wrong, you know, maybe Mr. Mason

22          can tell me otherwise - is I'm not sure that Mr. Mason would argue with you, uh,

23          that, uh - he'll argue with your first point, is the accrual date as being (inaudible) -

24          well, he won't necessarily argue with your - the accrual date being 1955. He will,

25          uh - but at least you say that the - the accrual date should be, put it this way, the

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    27
KNOEDLER ARCHIVUM, INC.

1    1966 time. I think that - that Mr. Mason may be acknowledging the '66 date as the

2    accrual date, putting aside the 93A, but he seems to be arguing other things having

3    to do with the - the running of the statute of limitations, uh, since that time. Let me

4    just ask Mr. Mason. Uh, you've had an opportunity to - to address this in a lot

5    more detail, but am I -

6

7    MASON: Certainly -

8

9    J:    - am I on - on the right track here -

10

11   MASON: Absolutely.

12

13   J:    - in understanding what your argument is -

14

15   MASON: Yes.

16

17   J:    - an acknowledgement of being aware that the, uh - that knowing or - or that there

18       was a significant problem with this painting at that moment in time?

19

20   MASON: There's no question.

21

22   J:    And you're not - you're not seeking an accrual date of 2000, are you?

23

24   MASON: No, the -

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    28
KNOEDLER ARCHIVUM, INC.

1   J:    Do you?

2

3   MASON: No, the argument is that the doctrines of (inaudible).

4

5   J:    OK, so that - that's what I - that's what I thought. So I - I don't think you're

6        going to get much of an argument with Mr. Mason that, uh - at least

7        acknowledging that the, uh - that the cause of action accrued at that time. He

8        doesn't accept your 1955 date, but he's accepting the 1966 date. OK, so really, it -

9        it's getting to these arguments that - and it's perhaps for that reason that I'm saying

10       that we need to read some of these letters in a - in a - in a fuller way to, uh, get at

11       this - the issue of, uh, I think it was, uh, equitable - you know, the equities, in

12       essence, uh, of having the statute. Go ahead.

13

14  SALINGER: Well, the reason why that's incorrect, Your Honor, why the museum's

15       position is incorrect, um, is because of the nature of the discovery rule itself. Um,

16       as I suggested earlier, if it applied, one does not need to discover all the details of

17       one's claim in order to know that there's a potential claim that you'd better

18       investigate.   That's all that's required.   And if you know that much, uh, then there's

19       no equitable tolling within the normal construct of the discovery rule. Um, the dis

20       - the, uh, equitable tolling concept only applies, as we've spelled it in our brief,

21       um, if there's a situation, uh, where the facts of a claim were inherently

22       unknowable, that there's nothing that a plaintiff could have done to learn about the

23       claim.   Uh, but that's not the case here. Uh, the museum could have investigated.

24       It could have pressed the Italian government, uh, for the information that it - it

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    29
KNOEDLER ARCHIVUM, INC.

1    eventually did receive from that very source in, uh, 2000. It could have pressed for

2    that information in 1966.

3

4  J:    Well, did - did it not? I mean I - again, I'd have to go and look at the - at the

5    particular letters, but I was under the impression from the letters, or at least, uh,

6    inferences from some of the letters or the facts that (inaudible) that during the

7    course of that year, at some point there was communication - some of it from the

8    museum itself, and some of it from, uh, Knoedler - to the Italian government, uh,

9    asking for certain, uh, follow-up information, uh, about the provenance of this

10   particular, uh, painting.   And then at some point, it seemed to have disappeared into

11   the ether, uh, after late 1966, if I have my - if I have my dates back. So it wasn't as

12   if the museum wasn't doing anything. They were, uh - uh, the museum, and

13   indeed, I think Knoedler, if I'm not mistaken, had, uh - let's see.

14

15   So let me just make some references here maybe this will help. There's, uh, in the

16   February 9'" letter from Mr. Ripperger to, uh, the museum, he says something along

17   the lines, the next step would be to write to the firm in Lucerne from which we

18   acquired the picture and I have know done so -so - so Knoedler is following

19   through on this. And then at some particular, uh - and then he attaches other -

20   other documents here. And then in the May 24th letter from Mr. Ripperger to, uh, to

21   the museum, um, he talks about a May 23' letter. I don't have that. Uh, I - I don't

22   have that letter, but I believe elsewhere there are allegations that - that maybe this

23   is in some of the documents in the original complaint. I don't know. (inaudible).

24

25   SALINGER: Your Honor, there was some limited additional correspondence -

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    30
KNOEDLER ARCHIVUM, INC.

1

2    J:       (inaudible). In the original complaint, right?

3

4    SALINGER: Well, there was nothing attached to the original complaint (inaudible).

5

6    J:       No, no. No, uh, attached to - maybe this is in the opposition, (inaudible) plaintiff.

7             Now actually, let me get - I can get back to this. (inaudible) let me ask, this is your

8             opposition. I'm going to ask -

9

10   SALINGER: Sure.

11

12   J:       - (inaudible) Mr. Mason. This gets back to a earlier question. You've attached

13            certain things in your opposition, OK? There's the September 2, 1966 letter.

14            September 14, 1966 letter. Oh, there is that May 25' letter. I guess that's - that's

15            the letter that was referred to that I - that I was missing in the complaint itself.

16            There's a letter from the director general of antiquities and fine arts in Italian on

17            July 25"', and a letter September 21[s] from the museum to Italy. Now - so those are

18            not contained in the - are those letters referenced in the complaint itself?

19

20   MASON: I believe that all of those are, in addition to some others. Uh, but there is -

21

22   J:       They're not attached to the complaint?

23

24   MASON: No. No. Uh, they reference the correspondence.

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    31
KNOEDLER ARCHIVUM, INC.

1    J:    Well, this gets back to an earlier question. I mean, and I haven't drawn a chart

2         here, but if I'm being asked to make a judgment on the pleadings, these are not in

3         the pleadings.

4

5    MASON: To the extent that a - for example, the September 2, 1966 correspondence to

6         Knoedler is referred to in the pleadings, then the document itself may be considered

7         by the Court, and I believe that -

8

9    J:    I understand that. But let me just say this. If I go through the pleadings, do you

10        happen to know, for example, whether or not the September 21, 1966 letter, which

11        is your Exhibit F -

12

13   MASON: Is, uh -

14

15   J:    - is in fact referred to in your pleadings?

16

17   MASON: Yes, in paragraph that's (inaudible) on the - we state that there is a (inaudible)

18        9/19/66, September 21, '66 the museum to Knoedler, and the museum to the Italian

19        government exchanged correspondence relative to, uh, the complaint.

20

21   J:    I understand that, but -

22

23   MASON: That - that is the reference to the September 21" correspondence.

24

25   J:    And what - what was the beginning? That was paragraph 15?

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.    32
KNOEDLER ARCHIVUM, INC.

1

2     MASON: That's correct.

3

4     J:     Right, but said - there's a starting date?

5

6     MASON: Uh, February 9[h].

7

8     J:     And do I have the February 9' letter?

9

10    MASON: Not attached to the, uh, our opposition because we didn't feel that it lended

11            anything (multiple conversations; inaudible) -

12

13    J:     Right.

14

15    MASON: - what correspondence that you do not have.

16

17    J:     That's right.

18

19    MASON: That is correct.

20

21    J:     OK. And with - with respect to these other, um - oh, I see the May 25"'. That's

22            another corr - these are - what about this September 14, 1966 letter, Exhibit B?

23

24    MASON: I don't believe that that is specifically referred to in - on our complaint.

25            Rather, we would assert that it's also in the category of during that period of time,

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.   33
KNOEDLER ARCHIVUM, INC.

1        there was correspondence which was exchanged, but there's no specific delineation

2        of that particular correspondence (multiple conversations; inaudible) -

3

4    J:    I thought that the correspondence was between the museum and the Italian

5        government?

6

7    MASON: The September 14' was, um, at Knoedler's -

8

9    J:    No, no, no, I know what September - the allegation of complaint.

10

11    MASON: Uh, the paragraph 15 that I was referring to?

12

13    J:    Yeah.

14

15    MASON: That simply refers to correspondence which was exchanged during that period

16        of time.

17

18    J:    Oh, it includes Knoedler?

19

20    MASON: That's correct.

21

22    J:    All right. And you're wanting the - you're saying that I should - those references

23        now, is I should make -

24

25    MASON: Subsume them.

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    34
KNOEDLER ARCHIVUM, INC.

1

2    J:    Subsume them? And it still remains under Rule 12?

3

4    MASON: That is correct.

5

6    J:    All right. Go ahead. All right. Go ahead.

7

8    SALINGER: Under the standard, legal standard as we have pointed out in our brief, is

9        that it's the plaintiff that has the burden to plead specific facts sufficient to support

10       tolling of the statute of limitations.   And the plaintiff has not done so here. The

11       plaintiff knew it had a problem, it knew it had a potential claim. Uh, the plaintiff at

12       the outset asked Knoedler to keep it quiet. There was some further exchange of

13       correspondence. Urn, after a few months, um, a letter that we had attached to our

14       previous answer, um, that's not attached to the second amended complaint, this

15       April 22'" letter, Knoedler confirms that as the museum had requested, Knoedler

16       was continuing to play a very quiet game. The museum - museum was not

17       pressing this, because it didn't want to. The museum has not met its pleading

18       burden and cannot meet its pleading burden of showing that, having been put on

19       notice by the Italian government that there was a challenge to the title, uh, in this

20       painting, that it could not have, uh, diligently pursued the possibility of a claim

21       against Knoedler at any time after 1966.

22

23       Um, the fraudulent con - concealment, uh, prong of this tolling argument fares no

24       better, Your Honor. As a matter of law, uh, the museum has the burden of proving

25       that, uh two conditions are met. First that Knoedler engaged in fraud or deliberate

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.
KNOEDLER ARCHIVUM, INC.

1    concealment of material facts. And second, um, that the plaintiff must have failed

2    to discover these facts within the normal limitations period.  Well, as I understand

3    the museum's theory, the only thing that they're claiming is that - and they seem to

4    be claiming that this was negligently withheld. That's not fraud. They're saying

5    that Knoedler should have realized that it had not acquired adequate title to this

6    painting, and that if only Knoedler had figured that out before selling the painting

7    to the museum, this wouldn't have happened. Urn, that does not make out tolling

8    for fraudulent concealment, because there's no actual allegation of fraud. There

9    would have to be specific facts laid out demonstrating that Knoedler knew that it

10    didn't have good title to this painting. None of that is alleged anywhere in the

11    complaint with specificity, Your Honor.

12

13    And secondly, um, the museum would have to meet its burden of being able to - to

14    prove, through specific pled - specifically pled facts that it couldn't have

15    discovered that.  Well, to the contrary, again, we know that as of January, 1966, if

16    there had been any concealment by Knoedler - again, no allegations supporting that

17    - uh, the museum learned of it in January of 1966 when the Italian government

18    came calling.

19

20  J:  Let me ask a question, with respect. Your entire argument, uh, in terms of this

21    statute of limitations, uh, assumes no difference, if you will - really, very much of

22    what you said in the beginning of your argument - uh, between the various claims

23    here.  Urn, so that the accrual date, as far as you're concerned for each one of these

24    claims, goes back at least to 1955, and at best to 1966. OK? But you draw no

25    distinctions between the various claims. You don't have a motion to dismiss the

1    stated claim, for example, on any particular, uh, ground, although you're arguing in

2    the context of that, for example, that the fraud claim might not - is it Rule 9 - it's

3    not specific enough with regard to what the fraud is, um, mainly that Knoedler

4    knew back in 19 - 1955 that it was not, uh, an owner in due course of the - of the

5    painting.  But that's not even alleged here. Um -

6

7    SALINGER: A little more broadly, Your Honor, as I understand the museum's position,

8    the museum's position is - first of all, they agree with us with the exception of the

9    Chapter 93A claim that we should probably speak about separately, that all of the

10    claims, uh, are properly dealt with in the same manner in terms of accrual, and if

11    the discovery rule applied, in terms of -

12

13    J:    No, I - I'm - I'm agreeing, but what I -

14

15    SALINGER: And - and the museum is arguing that the limitations period should be

16    tolled with respect to all of the claims under a fraudulent concealment theory. And

17    so their obligation to be able to allege facts with specificity is not limited to their

18    count that - that may be labeled (inaudible) -

19

20    J:    I - I'm making a somewhat different point. I understand your point having to do

21    with fraudulent concealment as it relates to tolling. Um, and uh, I'm not clear

22    either, as to what the fraudulent concealment was from 1966 onward, if - if you

23    will, OK, which is accepting, for purposes here, 1966 being the date from which to

24    measure the statute of limitations, and that it needs to be tolled because of

25    fraudulent concealment after that. I'm not sure what the fraudulent concealment is.

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    37
KNOEDLER ARCHIVUM, INC.

1          Unless somehow there's an allegation, and there's not, that the fraudulent

2          concealment in a sense is somehow related to or - or that there's fraud, as alleged

3          in Count 3, independent of fraudulent concealment, that says that the museum knew

4          in 1955, the museum, rather than - not the museum, the, uh, Knoedler knew in

5          1955 that it didn't have proper ownership of- of this painting and sold it anyway.

6          That would be the fraud, I believe. OK?

7

8    SALINGER: I think you're correct. That is not alleged.

9

10   J:      And - and it's not alleged, although there's a fraud count here. I don't know what

11          else the fraud would be, other than that. And all I'm saying is you're not making

12          any motion here to dismiss because of the failure to be specific as to what the fraud

13          count is all about. You're content, for purposes here, to, uh, argue this on a stat -

14          on statute of limitations only -

15

16   SALINGER: Yes.

17

18   J:      Is that correct?

19

20   SALINGER: Yes, Your Honor.

21

22   J:      OK.

23

24   SALINGER: The Chapter 93A claim cannot be used to get around the museum's statute

25          of limitations problems.  Under Mr. Mason's theory, um, if I have a potential claim

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.
KNOEDLER ARCHIVUM, INC.

1      for money damages against somebody, I can wait as long as I want - ten years, 20

2      years, in this case 50 years - until I actually ask them, perhaps with second time, to

3      pay me the money, my Chapter 93A claim does not accrue. That's - that's as I

4      understand (multiple conversations; inaudible) -

5

6    J:    Yeah, I understand. I'll - I'll ask Mr. Mason a little bit more about that.    What I

7        understood him to say earlier was that 93A did not exist in 1966, and somehow he

8        - he's trying to figure out a way to make it applicable, and uh, therefore is

9        (inaudible) the letter. But I think what your argument is that the 93A letter itself,

10      putting aside everything else, could not be written, um, more than six years - I

11      forget, six years is the statute of limitations on that?

12

13   SALINGER: Four years.

14

15   MASON: Four years.

16

17   J:   Statute of limitations on 93A, uh, after the action accrued. And you are going right

18      back to these original dates, either 1955 or 1966?

19

20   SALINGER: That's correct.

21

22   J:   That's your argument?

23

24   SALINGER: Mr. Mason and I agree that, um, Chapter 93A couldn't apply to the events

25      back then because it didn't exist, but you can't wait many years and - and then say

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.   39
KNOEDLER ARCHIVUM, INC.

1       I've got a new claim because I'm now making a demand. That - that's not how

2       93A works.

3

4  J:    What - what about, uh - what about Mr. Mason's claim, and in the context of

5       equitable tolling, of the museum's equitable tolling argument, that this whole

6       approach to the Italian government was done with Knoedler's, um, uh, concurrence,

7       and that it's unequitable, if you will, for Knoedler to now turn around and say, oh

8       yes, well we may have done that, uh, but um, it's still too late, you needed to sue

9       us?

10

11  SALINGER: Well, Your Honor, this was not a situation where - first of all, it's not even

12       alleged that this - any delay was at the instigation of Knoedler. Instead, the

13       complaint makes clear it was the museum in its first letter, when it first brought this

14       problem to Knoedler's attention, that said let's try to keep this quiet. So Knoedler

15       was - according to the face of the complaint. And what the plaintiff has attached to

16       the complaint, Knoedler (inaudible) -

17

18  J:    (inaudible) I don't - I - if I had to - my reading of that first letter? I don't read it

19       quite the same way that you read it. Uh, I - I read it as if let's not get the whole

20       world upset at this moment in time. You know, Springfield, you - you know, let's

21       - let's investigate this. I - I'm not sure it's as one-sided as I'm sure you'll agree.

22       Um, but - but in any case, I mean that gets to sort of inferences and interpretations

23       of - of these documents, which are, um - speak for themselves.

24

25  SALINGER: So let me -

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.             Pg.    40
KNOEDLER ARCHIVUM, INC.

1

2    J:      - until somebody says they speak for them - for the letters. But go ahead.

3

4    SALINGER: So let me get to my - my broader legal response, Your Honor. It goes back

5         to the discussion we had earlier about what is meant by the discovery rule and how

6         much knowledge one needs to have before you're on notice of having the claim.

7         The doctrine of equitable tolling classically comes up when the defendant, uh, does

8         something, uh, to prevent the plaintiff from realizing it has a potential claim. Uh,

9         either by concealing key information without which he wouldn't possibly know to

10        investigate, or by somehow pressuring the plaintiff not to do something, or - or in

11        rare instances, holding up quite affirmatively, you know, don't worry, I'll hold you

12        harmless if you don't sue me now instead - and then it becomes more of really an

13        estoppel point.   None of those variants of equitable tolling doctrine apply here.

14

15        The museum knew that it had a problem. It knew that it had a potential claim. It

16        immediately reached out to Knoedler and said, hey, what - what are we going to do

17        about this.   Uh, there is no allegation. Urn, and the First Circuit has emphasized

18        that there would have to be specific allegations of this kind, conclusory allegations

19        of inability, uh, to - to learn what is going on, are insufficient to - to meet the

20        pleading burdens here. And uh, there is no allegation that Knoedler has done - had

21        done anything affirmatively to tell the museums, uh, no, don't move forward on

22        this, uh, and we'll hold you harmless, or that Knoedler had done anything to make

23        it impossible for the museum to investigate its claim beginning at least in 1966.

24

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    41
KNOEDLER ARCHIVUM, INC.

1    J:    Well, you know, it - it - what's interesting about this case is the fact that you really

2    have three parties, if you will - um, the Italian government, Knoedler, and the

3    museum. And this whole notion of discovery and, uh, tolling very often has to do

4    with a dispute, if a dispute arose at some point, between the museum and the Italian

5    government.   What - what's different about this case is the, uh - is the fact that the

6    dispute is - is between the museum and the dealer here, and that the dealer

7    participated to a degree - and maybe that's, uh, a question of fact - but participated

8    to a degree in the decision and in the approach - this is the inferences that I'm

9    drawing from these correspondence - and an approach to be taken vis-a-vis the

10    Italian government.

11

12    And Knoedler wasn't standing by idly in this.   Making certain suggestions, doing

13    certain things, going back and forth. And um - and they may have been summaric

14    to all of that. I mean look what happened as a result of this. As a result of the

15    correspondence, the ensuing correspondence with the Italian government, the

16    Italian government waited another 34 years or so before it - it put its act together.

17    Now again, I don't have some of the other correspondence here, but I think with the

18    later correspondence, which may not matter, but the later correspondence, it seems

19    as if that includes a much more specific explanation on the part of the Italian

20    government to some of the questions that had been raised by the museum and by

21    Knoedler in 1966, name - you know, things having to do with - how do we even

22    know this was in Warsaw, for example. And what about this dispute between - uh,

23    in the book, somebody says, well, this painting was in the Uffizi Museum and then

24    it was at another museum (inaudible). And if I - I don't know exactly where it was,

25    but in reading the - a letter or some information from the Italian government in - in

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    42
KNOEDLER ARCHIVUM, INC.

1    2000 or thereabouts, there's a much more specific, uh, documentation, if you will,

2    sh -giving proof that this was indeed in the embassy in Warsaw, and going on and

3    on and on.

4

5    And I don't know how - how it got to Mrs. Peach's hands. I mean that is

6    somewhat unclear here, but it took a long time. So in some ways, if you will, there

7    is some merit to the inquiries, despite both - both Knoedler's and, uh, the museums

8    says that this is probably most likely, uh, that this, um - this same painting that

9    they're arguing - although I think at some point, and it - it made me curious, that

10   there may be other similar paintings of different sizes that exist elsewhere. You

11   know, maybe there's a theme here. But I - you know, something like that.

12

13   So there was this comparison, if you will, about a certain approach, uh, to take.

14   And um, that indeed had - had some success. And uh, getting to this - sort of this

15   - the estoppel aspect, as you put it, of, uh - of tolling, I mean in essence, isn't the

16   doctrine of estoppel quite different than the doctrine of tolling? And is that not

17   what the museum is arguing here, that assuming you're right, the museum is right

18   on the discovery issue and the - at least the accrual date happening in 1966, and

19   assuming that the museum is right on the issue of fraudulent concealment, OK, that

20   there was no fraudulent concealment, and assuming that the museum is even right

21   on the - on the tolling, because it - there wasn't anything done between, uh -

22   between the two, which seems to fit into the tolling aspect, the tolling standard -

23   um - you know, having to do with discovering something without due diligence.

24   It's clearly they may well have - they knew or should have known that they - they

25   had an action, possible action against, um - up against Knoedler.

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.          Pg.    43
KNOEDLER ARCHIVUM, INC.

1

2          But then - and if Knoedler had done nothing or if Knoedler had said you have to

3          return this - they had done nothing other than, you know, receive letters, and all of

4          this was done at the instigation, if you will, of the museum, in raising these

5          questions and delaying and procrastinating vis-a-vis the Italian government, your

6          case would be a much easier case. But once - once Knoedler participated, um, in

7          this, and in some ways encouraged plaintiff to take - to take those certain kinds of

8          steps, is not - is not Knoedler estopped from making its statute of limitations

9          argument at this particular point, and why not?

10

11    SALINGER: No, Your Honor. There is no case law that says, uh, defendant is estopped

12          from relying on a statute of limitations if the defendant has made some effort,

13          which is what you're suggesting one could read here. Some effort to encourage the

14          plaintiff not to sue you. That does not give rise to estoppel. The strong public

15          policy underlying the statute of - statute of limitations, uh, exists for cases like this.

16          Uh, people and - and institutions need to be able to settle their affairs. And

17          decades old - 50 year-old claims need to be put to rest. Uh, if the museum -

18

19    J:     But wasn't that a risk that Knoedler itself was taking at that very time. I mean the -

20          the notion of estoppel, it may stop - estoppel is what - a statute of limitations, um,

21          is estoped when a defendant made representations it knew or should have known

22          would induce the plaintiff to put off bringing suit and the plaintiff did, in fact, uh,

23          delay in reliance on those representations. Now granted, it's not a direct, but it's

24          certainly an indirect. There's a certain benefit that Knoedler understood it was

25          going to get - and that's why I asked. I don't now what the amount of that benefit

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    44
KNOEDLER ARCHIVUM, INC.

1    was because we don't know what the value of the painting was at that particular

2    point, OK, and what the suit might be, OK? And that gets back to another point

3    that you were making, that maybe it's only a (inaudible). But putting all of that

4    aside, Knoedler's actions here, could they not be interpreted as helping to induce

5    the plaintiff to put off making a claim against - against Knoedler as long as, uh,

6    they were able to delay, uh, returning anything to the Italian government, and that

7    Knoedler also took a risk in doing that, and um, has to - to pay for that risk at this

8    particular point?

9

10   SALINGER: No, Your Honor, and at least a two part response.

11

12   J:    OK.

13

14   SALINGER: Part one, there's no representation. Uh, what the museums say Knoedler

15   did is Knoedler was asking questions. How do we know Knoedler was joint in the

16   museum in asking? How do we know that - that this painting was stolen? How do

17   we know it should be given back? There's no allegation in the second amended

18   complaint of affirmative representations by Knoedler about some factual matter

19   being relied upon by the museum in 1966. And that's the second part answer, Your

20   Honor. Even if there were the - the only representations that were claimed to go on

21   were during a limited period in 1966. Um, there - it is not the case, uh, that if - if I

22   tried to discourage somebody from suing me for some period of time that that gives

23   them a free pass and they can sue me in 50 years or sue my estate in 200 years. For

24   all time, the statute of limitations just stops running.

25

1    There - there were no representations that tolled the statute from running here. But

2    if there were, there's no allegation of any such representations being made after

3    1966.  And so if there was a tolling period, which there certainly was not, but

4    hypothetically if there was, it - it ended sometime during this period of time in

5    1966, because there was not any ongoing attempt by Knoedler to discourage the

6    museums from doing what it - what they should have done, diligently investigating

7    their potential claim.  And so the statute of limitations, even if they had been tolled

8    - again, they weren't - but are - let's say for argument, if there was tolling, it ended

9    long, long ago, far more than 20 years ago. And the statute of limitations exist so

10   that Your Honor or - or jurors at some point in the future, uh, don't need to be

11   trying in 2004 to figure out what was going on in 1955 when this painting was

12   purchased.

13

14  J:    OK, thank you very much.

15

16  MASON: Good afternoon, Judge (inaudible), and thank you on behalf of our client for

17       (inaudible) in a very interesting and difficult case. I think that you, uh, very

18       sophisticatedly understanding as to what the museum's allegations are. The

19       museum's allegations are not simply that there was an agreement which was

20       entered into in 1955, that carried with it the warranty. The museum's case is about

21       what happened in 1966. And as you have surmised, whether or not, as the museum

22       alleges, Knoedler participated in decisions, um, at an approach to be taken vis-a-vis

23       the Italian government on the - as to whether or not Knoedler, uh, participated in

24       the decision to stand by idly, um that (inaudible) standing by idly proved to be quite

25       fruitful, certainly for a period of 30 to 40 years. Indeed, this is a case about

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.     Pg.    46
KNOEDLER ARCHIVUM, INC.

1    estoppel.  This is a case about actions which the art dealer took, which permitted

2    the museum to conduct its due diligence, as it deemed it had, uh, so performed on

3    and then when the Italian government failed to respond, the museum to conclude

4    that no cause of action was being pursued.

5

6    This is a case in estoppel which, I believe, draws a very fine line of distinction

7    where it may lead to theories of fraudulent concealment and equitable tolling and,

8    uh, the discovery rule. That's what this case is about. Uh, that - and in that regard,

9    I would suggest that, um, the very well articulated argument that Attorney Salinger

10   has just put, relative to this simply being a case about their warranty is incorrect.

11   This is a case which goes to the core of counts such as (inaudible) been able to

12   (inaudible) and what obligations a merchant owes to a customer in order to conduct

13   itself, uh, in a matter which would not move the customer to, uh, a possibly

14   (inaudible) that it had conducted all relevant search and inquiry, that it conducted

15   itself in due diligence, as the museum had done so in this particular case.

16

17   Um, I would like, just to clarify for the record, uh, to point to your attention, uh at

18   the second amended complaint, our count that we report (inaudible). Um, a, both

19   paragraph 39, line 2, where we specifically allege, uh, the deceit relating to those

20   previous statements as their (inaudible) admissions. And it's that second term that

21   is perhaps as salient. And more directly, to paragraph 41, which talks about, um -

22   which alleges that as a result of notice, misrepresentation, (inaudible) and

23   fraudulent concealments (inaudible) that Knoedler was not the lawful owner until

24   about 19 - 2001 (inaudible).

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    47
KNOEDLER ARCHIVUM, INC.

1    J:    Well, I - I'm not really - I think we have two different things here that as I may

2          have confused Mr. Salinger initially. The fraudulent concealment, in a sense, is - is

3          a concept, if you will, that's related to the statute of limitations. Um, and what I

4          was really saying was in terms of the fraud, uh, count, usually when you have a

5          fraud count under - under Rule 9, you know, you're held to a somewhat heightened

6          level of pleading. And I don't know what - you know, what you're saying that -

7          that the fraud was, I mean, that they actually knew - I mean, you don't know. And

8          - and this is this - the issue about fraud. No matter how much - you've got to find

9          out about fraud, so to speak, uh, during discovery and how much you need to plead

10         it.  But all that I was asking of Mr. Salinger was, um, whether or not he was seeking

11         to dismiss that particular count, if you will, on failure to save a claim, or - or on

12         Rule 9 principles, and he wasn't. He's not at that point here. Uh, I see here he's

13         saying that everything needs to be thrown out, because whatever the, um -

14         whatever the claims are, they all accrued and the statutes have gone on them.

15

16         So - but the fraudulent concealment, what are you saying would be the fraudulent

17         concealment here vis-a-vis the statute of limitations claim running - assume for the

18         moment that I accept your position that the - the, uh - that the statutes begin to run

19         in 1966? Urn, what was concealed, what are you saying was fraudulently

20         concealed from the museum by Knoedler?

21

22    MASON: What was concealed - the veracity of the statements set forth in that the, uh -

23         the bill of sale, that the picture comes from Mrs. Peach, a Swiss lady in whose

24         family the picture had remained for a very long time. That's the fraud. Or -

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    48
KNOEDLER ARCHIVUM, INC.

1    J:    Is that how she pronounces - Mrs. Peach?

2

3    MASON: I believe so, only because I had a second grade teacher who spelled her name

4        that way and she was Mrs. Peach. Uh, it might be Mrs. Peish, I don't know. Uh,

5        but -

6

7    J:    I called her Mrs. Peach. I mean, do you have - do you have - uh.

8

9    MASON: The fact of the matter is that - and the museum is supposed to do such

10        testimony, urn, with its experts. It was very well known after World War II that

11        much of the finest art in the world, uh, European art, had been looted by the Nazis.

12        Knoedler, indeed, was one of the largest (inaudible) one of the largest art dealers in

13        the world. Now we anticipate that we will be able to demonstrate that it knew or

14        should have known that provenance of the painting at issue was suspect. Certainly

15        to represent as they did in the bill of sale that the painting had been in a Swiss

16        family for a "very long time," urn, uh, begs the question. And that's the level of

17        fraud that we would allege. And stepping back, as one might surmise how this - on

18        the picture, um (inaudible) will be depicted, urn, but these are circumstances where

19        these (inaudible) alleges that Knoedler should have known that there was indeed a

20        legitimate question. Importantly, there is correspondence, which we append to our

21        opposition at, urn, Exhibit D, from Knoedler, that's the September 14, 1966 letter

22        that you questioned, which truly does transcend on the, uh, the level of

23        (inaudible)tation that Attorney Salinger (inaudible) is merely innocent.

24

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    49
KNOEDLER ARCHIVUM, INC.

1       And in that regard, um, Knoedler's representative says in paragraph 3, there was

2       still an important point that we have not as yet resolved. And it goes on to what

3       that point is.  Next paragraph - and this quite poignant language - I have little

4       knowledge of such things, but I feel positive that any court of law either here or

5       abroad would demand such evidence. And it - then Knoedler's representative goes

6       on to pose the various questions. And indeed, in the last correspondence in 1966,

7       which is appended to our opposition at Exhibit E, the museum's director, Mr.

8       Robinson, writes to, um, the director general of the, um, uh, Italian government,

9       and um, (inaudible) that, um, their (inaudible) simply repeats what they had written.

10      Still not proving to us that the Springfield painting is the one that you say is in the

11      embassy. And it goes on to pose certain questions, questions which remain

12      unresolved for a period of 34 years, questions which Knoedler - had Knoedler's

13      participation (inaudible) as (inaudible) requested.

14

15      Indeed, this is a case that, uh, is all about equity. It's all about - I'll put it in

16      quotes, "the doctrine of unclean hands" - to the extent that, um, that Knoedler, um,

17      should be estopped in claiming that the statute of limitations arose in 1966 when

18      they participated in a level of concealment.

19

20  J:    Well, what are you - what are you say to Mr. Salinger's argument that, you know,

21      Knoedler was raising these questions but it wasn't making any representation, but it

22      particularly wasn't making any representations, uh, to forestall, um, the museum

23      from making it - a claim against Knoedler?

24

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.              Pg.    50
KNOEDLER ARCHIVUM, INC.

1      MASON: He - I would draw your attention back to the September 14' letter, wherein in

2           discussing, um, the veracity and the integrity of (multiple conversations; inaudible)

3

4

5      J:      Which - there were two (inaudible) in here?

6

7      MASON: Exhibit B, I apologize.

8

9      J:      Exhibit B?

10

11     MASON: Yes, of the opposition.

12

13     J:      OK. Go ahead.

14

15     MASON: Um, and particularly if you read through the entire letter, um, the, uh,

16           representations which are made refer to, um, in particular, whether or not the

17           particular art historian's comments are anything more than, um, ambiguous further

18           stating that on - this is in paragraph 3 - um, that no positive proof has been

19           presented to you that the picture was actually in the Italian embassy in Warsaw.

20

21     J:      OK. Go ahead.

22

23     MASON: Those are the - that is the level of representation. And I totally respect that the

24           statute of limitations are - are here for a reason, so as not to revive claims that arose

25           from 34, 37 years ago. But not at the expense of the plaintiff, who has been led

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.        Pg.    51
KNOEDLER ARCHIVUM, INC.

1          down such a (inaudible) path. That is not the purpose of the statute of limitations,

2          and that's why, um, the doctrines of equitable tolling, encroachment, concealment,

3          and the discovery rule apply. Having said all that, uh -

4

5      J:      Well, let me just say -

6

7      MASON: Sure.

8

9      J:      And I - I thought that I've asked this of Mr. Salinger himself. Isn't this the notion

10          of, uh, estoppel - equitable estoppel somewhat different than the tolling? You

11          seem to collapse the two.

12

13      MASON: I do in my mind, Your Honor, uh, because one leads to the other.

14

15      J:      But the tolling, uh, has to do with the plaintiff here, the museum not having the

16          information it needed to file suit within the limitations period, and could not have

17          discovered it with reasonable due diligence. Your argument around tolling is based

18          on the fact that there was a legitimate issue, OK, as to whether or not this was the,

19          um - the art piece in - in question, OK?

20

21      MASON: Absolutely.

22

23      J:      But let's assume, uh, for - for the moment, um, that there wasn't such a significant

24          question about this being - being it, and that, if you will, the museum, uh, in an -

25          so an unfavorable light says, you know, how can we delay this, how can - how can

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    52
KNOEDLER ARCHIVUM, INC.

1    we push them off, how can we do those kinds of things, and Knoedler says, well,

2    you know, let's ask them about this, let's ask them about that. So it's not a

3    question of not knowing that whether or not you could file suit, although I guess it

4    would be somewhat odd to want to hold on to the mus - uh, to the piece and sue

5    Knoedler at the same time, although maybe that's what it would be like in, uh, you

6    know, in an interpleading in some odd way, as a suing them, preserving your rights

7    and having them prove that this is the piece and putting them to the test, putting

8    Knoedler to the test of, uh, demonstrating that, uh, it was legitimately sold to you.

9

10    Uh, but that notion of equitable tolling is, uh - is distinct not from what you knew,

11    but from actions which were taken under the - the equitable estoppel, uh, argument,

12    aspect of your argument, having to do what the defendant did in making certain

13    representations, uh, to you.  Uh, and um -

14

15    MASON: And I suppose if I don't raise it (inaudible) in this stage of the litigation it's

16        somewhat difficult for me to posit what exactly Knoedler knew at a such a time.

17        But I - I suppose but otherwise, and I fully intend to argue, um, this matter, was the

18        notion that Knoedler is estopped. But getting back to your very legitimate question

19        as to, well, let's presume for a brief moment that, um, that both that the museum

20        and Knoedler really thought that this was a correct painting. All they were doing

21        was just trying to ask the Italian embassy tough questions to maybe make them go

22        away. It don't think it works quite that way when one is talking about an Old

23        Master painter.   Um, I don't think the Italian government just perceives (inaudible)

24        just decides to (inaudible).

25

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.
KNOEDLER ARCHIVUM, INC.

1       Um, indeed, perhaps, um, if one were to look back, that then shines some

2       legitimacy on the level of questions that were being posed of, uh, the Italian

3       government, such as the questions posed on September 21, 1966, let - last letter,

4       uh, inquiring as to when the so-called theft was first discovered, by whom, when it

5       was recorded, are there inventory records. Those were legitimate questions, so that

6       there remained legitimate questions in the mind of the museum, certainly in the

7       mind of Knoedler, as set forth in this letter, as to the integrity of the Italian

8       government's claim.

9

10   J:    So what - so what you're saying is this was, uh, part of the, uh, plaintiffs due

11       diligence hearing at this point in time?

12

13   MASON: Absolutely.

14

15   J:    And that you didn't know, and as long as the painting was in your hands, you didn't

16       know that you could sue Knoedler?

17

18   MASON: Yes - yes, exactly. The - well, the second count of the equitable tolling

19       standards, also the (inaudible) relates to some level of due diligence on it, and the

20       museum maintains that it engaged in due diligence during the period, January of

21       1966 through September of 1966. It engaged in a level of questions and answers

22       between Knoedler and the Italian government to determine whether or not the

23       painting in question was the stolen painting. And that, in effect, when the Italian

24       government fails to respond in September 1966 for 34 years, uh, that that is - its

25       actions speak louder, so to speak, than its words, and it ended up damning its

1    claimed, so to speak. Urn, and that as such, its decision not to return the painting

2    on the - was - was gratified. Uh, and so its due diligence, in direct response to

3    your question, was all that was done during the course of 1966.

4

5    J:    OK.

6

7    MASON: And we've been arguing for some time, so I'm going to, um - telescope some

8    of my comments to you. Um, the, uh - the gallery maintains that, uh, that Knoedler

9    - uh, that the museum is not entitled to the protection of the, uh, discovery rule.

10    Nonetheless, the museum had a reasonable basis to question whether or not it had

11    good title, uh, to the painting of, uh - for that 34 year, um, that period. And we

12    would suggest that, uh, that they level of damage that we had on the art (inaudible)

13    justified the museum's forbearance on, um, any further discovery as to whether or

14    not the painting was indeed a stolen painting.

15

16    At bare minimum, Your Honor, the, uh - um, and - the standard which the

17    defendant in this matter is held to under (inaudible) has not been met. That is to

18    say that certainly are you to accept all the allegations that we have set forth in our

19    second amended complaint as true, that um, the defendant is not entitled to

20    judgment as a matter of law. Uh, in many respects, the gallery's request of

21    (inaudible) with all due respect to the gallery is premature. Uh, I would certainly -

22

23    J:    What's - what's premature?

24

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    55
KNOEDLER ARCHIVUM, INC.

1    MASON: The gallery's request for dismissal of this matter is premature. Um, there are

2         ancillary documents that are referred to in opinions that you do not have before

3         you.   We anticipate that there would be further evidence that used during the course

4         of discovery, uh, in order to bolster the, uh, the museum's claim as well as to, um,

5         cast doubt on Knoedler's defense. Um, in those many, many regards, there remain

6         genuine issues of material fact such that the disposition of, um, the case at this very

7         nascent stage is inappropriate.

8

9    J:    Well, you know, let me just - OK, anything else?

10

11   MASON: I've already referred to the various paragraphs, um, that directly set forth

12        counts for fraudulent concealment. And I think in many other respects we've

13        covered all the bases in the past hour and a quarter, so -

14

15   J:    OK. Um, Mr. Salinger, very briefly, the - usually an issue of accrual can be

16        (inaudible) can be a question of fact for the jury. But assuming - what about the

17        notion of tolling or equitable estoppel? Are those factual issues or are those

18        questions of law?  What do you believe?

19

20   SALINGER: The case law tells us that a motion for judgment on the pleadings is a

21        classic way to resolve statute of limitations issues. That's true on the face of this

22        second amended complaint as well. As we've set forth in our brief, uh, it's not

23        enough in a complaint for a plaintiff to, uh, make conclusory allegations about

24        tolling, to make conclusory allegations that we could not have known we had a

25        claim or that there was some kind of fraudulent concealment. But the plaintiff has

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.    Pg.    56
KNOEDLER ARCHIVUM, INC.

1    to - under First Circuit case law, has to plead sufficient facts to spell that out. Uh,

2    the plaintiff didn't do so here because it can't do so here. Here what the undisputed

3    facts tell us is that as of 1966, uh, at the latest, the museum knew that it had a

4    potential claim against Knoedler, and it was trying to figure out what to do about it.

5

6    Uh, there's no, uh, misconduct, no estoppel-type misconduct on behalf of Knoedler,

7    given that Mr. Mason concedes that the questions Knoedler was raising were

8    legitimate questions.  Uh, one does not lose the protection of the statute of

9    limitations by asking a - a potentially adverse party legitimate questions about the

10    validity of a claim. All that's required - uh, again, assuming it did not accrue in

11    1955 - all that's required for the limitations period to start running in 1966 is that

12    the museum knew that it had a problem and that it might possibly have a claim

13    against Knoedler. It chose to do nothing further after 1966. Urn, it could have

14    presented a claim against Knoedler in various forms, but it chose not to. It hoped

15    that it would go away.  Well, that hope is a fine, uh, perhaps logical strategic

16    decision by the museum, but it's incapable, as a matter of law, of tolling the

17    limitations period. And so this is an appropriate decision on the face of the

18    pleadings, and is not a fact-bound question, uh, that - where factual findings would

19    need to be made by a jury or otherwise.

20

21    J:    OK. I'll take it under advisement. Thank you. You know, actually, let me - you

22    wanted to follow up on that. I'll take it - you know, a six page memo, if you want

23    to, on your warranty issue, and I'll take another six page memo, uh, on the, uh,

24    equitable estoppel issue.  And if you could have that in, uh, my, uh - let's say a

25    week from Wednesday, so (inaudible).

SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC. v.
KNOEDLER ARCHIVUM, INC.

1

2     SALINGER: That would be fine, Your Honor.

3

4     J:     (inaudible) one, two - February 4', is that right?

5

6     MASON: Thank you, Your Honor.

7

8     J:     OK, thank you very much, gentlemen. Very nicely presented.

9

10    SALINGER: Thank you, Your Honor.

11    END OF TAPE

12

13

14

15