UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPRINGFIELD LIBRARY AND ) | |
| MUSEUM ASSOCIATION, INC., ) | |
| Plaintiff ) | |
| ) | Civil Action |
| v. ) | No. 03-CV-30219-MAP |
| ) | |
| KNOEDLER ARCHIVUM, INC. f/k/a ) | |
| M. KNOEDLER & COMPANY, INC., ) | |
| Defendant ) | |

**PLAINTIFF, SPRINGFIELD LIBRARY AND MUSEUM ASSOCIATION, INC.'S, OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

MARK D MASON, ESQUIRE
Cooley, Shrair P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042
BBO#: 544936
mmason@cooleyshrair.com

# **TABLE OF CONTENTS**

Page

Argument

I. Magistrate Judge Nieman's Recommendation Regarding the Doctrine of Equitable Estoppel Is Not In Error. ... 1

   A. The Museum Has Alleged Facts Sufficient to Satisfy Minimum Requirements for Equitable Estoppel under Massachusetts Law. ... 1

      1. Judge Neiman Correctly Found That As the Facts Now Stand, Knoedler May Have Induced the Plaintiff to Put Off Bringing Suit ... 2

   B. The Museum's Acts Or Omissions Were In Response To Knoedler's Representations ... 3

      1. The Cases Knoedler Cites Relating To Equitable Estoppel Are Distinguishable From The Within Matter ... 4

   C. The Museum Has Suffered Detriment As a Result of Knoedler's Acts or Omissions ... 8

   D. The Museum Has Set Forth a Claim That Knoedler Knew or Had Reasonable Cause to Know the Consequences of Its Representations ... 8

   E. Magistrate Judge Neiman Was Correct in Recommending That Knoedler's Refusal to Pay the Museum's Settlement Demand in December 2001 Could Give Rise to a New Breach of Warranty in Violation of M.G.L. c. 93A ... 10

II. Conclusion ... 11

**ARGUMENT**

I. **Magistrate Judge Nieman's Recommendation Regarding the Doctrine of Equitable Estoppel Is Not In Error.**

   A. **The Museum Has Alleged Facts Sufficient to Satisfy Minimum Requirements for Equitable Estoppel under Massachusetts Law.**

The Museum has articulated a claim setting forth Equitable Estoppel. Massachusetts law recognizes that the "essential factors giving rise to an Estoppel are ... (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission." Greenwood v. Martins Bank, Ltd. (1933) A.C. 51, 57, cited with approval in Cleveland v. Malden Sav. Bank, 291 Mass. 295, 297-298 (1935); Industrial Bankers of Mass. Inc. v. Reid, Murdoch & Co., 297 Mass. 119, 124 (1937); Celluci v. Sun Oil Co., 2 Mass.App.Ct. 722 (1974); Boylston Development Group, Inc. v. 22 Boylston Street Corp., 412 Mass. 531, 542 (1992); Jerome J. Donovan, Third's Case; 58 Mass.App.Ct. 566, 791 N.E. 2d. 388. Otherwise stated, "In order to work an estoppel, it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of Estoppel is not applied except when to refuse it would be inequitable." Boston & Albany Railroad v. Reardon, 226 Mass. 286, 291.

1

1. **<u>Magistrate Judge Neiman Correctly Found That As the Facts Now Stand, Knoedler May Have Induced the Plaintiff to Put Off Bringing Suit.</u>**

The facts alleged in the Museum's Second Amended Complaint, along with the documentary evidence before this Court, establish representations or conduct intended to induce the Museum to enter into a course of conduct vis-à-vis the Italian Government's request relating to <u>Spring Sowing</u>. Correspondence the parties and the Italian Government exchanged during the course of 1966, demonstrate that Knoedler participated in decision-making as well as the approach be taken relating to the Italian Government. Knoedler did not stand idly by as the parties posed legitimate questions relating to the provenance of <u>Spring Sowing</u>. As Judge Neiman stated, "In short, as the facts now stand, it appears that Defendant took active steps to forestall any claims which Plaintiff might have pursued directly against it and, therefore, that equitable estoppel may apply." Report and Recommendation at p. 13 citing <u>Bergeron v. Mansour</u>, 152 F.2d 27, 30 (1st Cir. 1945).

For example, in response to the Museum's January 17, 1966 correspondence, a copy of which is attached to the Second Amended Complaint at Exhibit "C," Knoedler poses a number of questions relating to <u>Spring Sowing</u>'s provenance, confirms Knoedler has written to "the firm in Lucerne from which we acquired the picture...," and sets forth a course of investigation. See Second Amended Complaint at Paragraphs 12, 13, 14 and Exhibit "E" attached thereto. In furtherance of their investigation, the Museum and Knoedler exchanged correspondence through to the Museum's September 21, 1966 correspondence. <u>Id</u>. at Paragraph 17. Indeed, Knoedler makes a number of representations intended to induce the Museum to pursue a particular course of conduct

2

in its September 14, 1966 correspondence to the Museum. See Exhibit "B" attached to the Museum's Memorandum of Law in Support of its Opposition to the Defendant's Motion for Judgment on the Pleadings (hereinafter the "Memorandum"). In its September 14, 1966 correspondence, Knoedler states, "There is still an important point which we have not as yet resolved." "I have little knowledge of such things, but I feel positive that any court of law, here or abroad, would demand such evidence." Knoedler goes on to pose a number of unresolved questions relating to Spring Sowing's provenance as well as the integrity of the Italian Government's assertion.

### B. The Museum's Acts Or Omissions Were In Response To Knoedler's Representations

Judge Neiman correctly found that, as the facts now stand, it appears that Knoedler took active steps to forestall any claim the Museum might have pursued directly against Knoedler. In response to the inquiries Knoedler posed and the comments Knoedler made, the Museum transmitted its September 21, 1966 correspondence to the Italian Government, a copy of which is attached to the Memorandum at Exhibit "E." In its September 21, 1966 correspondence, the Museum presents Knoedler's and the Museum's concerns to the Italian Government. The Museum ratifies Knoedler's concern that the Italian Government has yet to prove that "the Springfield painting is the one [the Italian Government] say[s] was in the Italian Embassy in Warsaw." Id. When the Italian Government failed to respond to the legitimate inquiry posed in the Museum's September 21, 1966 correspondence for a period of thirty-four years, the Museum took no further action. The Museum's response was borne of and as a direct result of Knoedler's representations and/or omissions relating to Spring Sowing's provenance and the Italian Government's failure to respond as a result of such inquiry.

3

### 1. The Cases Knoedler Cites Relating To Equitable Estoppel Are Distinguishable From The Within Matter.

The cases Knoedler cites relating to Equitable Estoppel are distinguishable from the within matter. For example, in <u>Safe Environment of America, Inc., v. Employer's Ins. of Wasau</u>, 278 F.Supp.2d 121, 127 (D. Mass. 2003) (Nieman M.J.), Magistrate Judge Nieman entered Summary Judgment for Defendant finding that there was no evidence that Defendant induced Plaintiff to delay suit. The Court found, rather, the evidence demonstrated that in reply to Plaintiff's correspondence "stating that it may file a claim on the bond, Defendant asked for supporting documentation." <u>Id</u>. The Court stated, "Plaintiff never responded. In other words there appears to be no acts by Defendant which might have equitable stopped it from relying on the one year limitations." <u>Id</u>. Unlike the Defendant in <u>Safe Environment of America, Inc.</u>, Knoedler took active steps to encourage the Museum to "challenge the Italian Government in the hope that the painting would never have to be returned." Report and Recommendation at page 13. The success of Knoedler's advice and strategy, at least for thirty-four years, reasonably led the Museum to believe that the Italian Government had insufficient evidence to pursue its claim. See <u>Id</u>. at 13-14.

Likewise, <u>Ford v. Rogovin</u>, 289 Mass. 549 (1935) is distinguishable on its facts. In <u>Ford</u>, the Court found that "during this period of ten months, so far as it appears, there were no words or conduct of the defendant calculated to lull the Plaintiff into security. Consequently, it could not have been found that words and conduct of the Defendant were such that it was reasonable for the Plaintiff, in reliance thereon, to delay commencing action until the period of limitations set by the statute had expired." <u>Id</u>. at 553. In the within matter, the facts and evidence presented in Court demonstrate that

4

Knoedler lulled the Museum into a sense of security which endured thirty-four years. Such endurance ratifies the Museum's reasonable reliance upon Knoedler's representations. d Kozikowski v. Toll Bros., Inc., 354 F. 3d 16 (1st Cir. 2003) (In Kozikowski, the Court found that Plaintiffs failed to establish that their alleged reliance on Defendant's representations were reasonable in circumstances demonstrating that Defendant's representations were vague, and unreliable. Id. at 24 –25.)

Similarly, Knoedler' reliance on Trifiro v. New York Life Ins. Co., 845 F.2d 30 (1st Cir. 1988) is misplaced. In Trifiro, the Court declined Petitioner's argument that he reasonably relied upon Defendant's statement that approval of the sale of realty would be a mere formality. Indeed, the Court found that the facts indicated that the Plaintiff acted in a manner contrary to his own knowledge and understanding of the facts. In so finding, the Court concluded that Plaintiff's "acts must be deemed unreasonable as a matter of law." Id. at 33. No such similar facts are present herein. In the within matter, the Museum reasonably relied upon Knoedler's representations to the extent that Knoedler was one of the world's foremost authorities in the sale of Italian Renaissance art.

In this regard, the Museum's Second Amended Complaint alleges that Knoedler withheld key facts from the Museum. In particular, the Museum alleges that:

    8.    Prior to sale of Spring Sowing, Knoedler represented to the Springfield Museums that it maintained an expertise in the sale of Italian Renaissance paintings such as Spring Sowing.

    9.    Prior to the sale of Spring Sowing, Knoedler represented to the Springfield Museums that it had examined Spring Sowing's

5

provenance and that Knoedler maintained clear title to sell <u>Spring Sowing</u> to the Springfield Museums.

10. Knoedler's representations to the Springfield Museums were false whereas Knoedler was not the lawful owner of <u>Spring Sowing</u> and, hence, Knoedler did not maintain good title to sell <u>Spring Sowing</u> to the Springfield Museums.

\* \* \*

39. The Springfield Museums was deceived and wrongfully induced to rely, to its detriment, upon Knoedler's misrepresentations and misleading statements and/or omissions regarding <u>Spring Sowing</u>, including but not limited to representations that Knoedler was the lawful owner of <u>Spring Sowing</u>, that it was passing good and clear title to <u>Spring Sowing</u> to the Springfield Museums, and that it would warrant and defend the Springfield Museums against claims in order to induce the Springfield Museums to purchase <u>Spring Sowing</u>.

40. The Springfield Museums' reliance was known or should have been known to Knoedler, and Knoedler made the misrepresentations hereinbeforementioned knowing them to be false and fraudulent with the intention of deceiving and inducing the Springfield Museums to rely on such misrepresentations.

41. As a result of Knoedler's misrepresentations, omissions, and fraudulent concealments, the Springfield Museums learned that

6

Knoedler was not the lawful owner of Spring Sowing until in or about 2001.

42. As a direct and proximate result of Knoedler's fraudulent misrepresentations and omissions, the Springfield Museums has suffered and continues to suffer damages.

Unlike the statements of opinion the Plaintiff relied upon in Rodowicz v. Mass. Mutual Life Ins. Co., 192 F.2d 162 (1st Cir. 1999), Knoedler's representations herein find their genesis in the purportedly factual representations Knoedler set forth in its Bill of Sale. In the Bill of Sale, Knoedler "covenant[s] with the grantee it [is] the lawful owner of the said goods and chattels; that they are free from all encumbrances; that it have [sic] good right to sell same as aforesaid; and that it will warrant and defend the same against lawful claims and demands of all persons." See Report and Recommendation at page 2. The Bill of Sale further provides that the subject painting came from "a Swiss lady in whose family the picture had remained for a very long time." See Id. at 10-11, fn 5. Such representations are categorically factual in nature. They are not mere opinions. The Museum alleges it relied upon such representations in considering the Italian Government's request for return of Spring Sowing. Likewise, the Museum alleges that Knoedler contracted to indemnify the Museum for any and all actions relating to the painting at issue. Hence, the Museum's claim is predicated upon seminal misrepresentations of fact. See Second Amended Complaint at Paragraphs 4-10, 39-42.

Knoedler is equitably estopped from asserting its defense of the statute of limitations, at a minimum, until on or about October 20, 2000, when the Italian Government demanded return of Spring Sowing. In this regard, the circumstances

7

inducing the Museum to delay filing suit did not cease until such demand. See Pagliarini v. Iannaco, 440 Mass. 1032 (2003). The within matter is distinguishable from Deisenroth v. Numonics Corp., 997 F. Supp. 133 (D. Mass. 1998), which Knoedler cites, wherein the Deisenroth Court denied Plaintiff's claim relating to equitable tolling of the statute of limitations. In Deisenroth, the Court found that at least one year before the expiration of the three-year statute of limitations, discussions or negotiations between Plaintiff and Defendant ceased completely. Id. at 157. "Moreover, there could be no reasonable reliance on these discussions, particularly in light of defendants' intransigence which led to the earlier litigation." Id.

### C. The Museum Has Suffered Detriment As a Result of Knoedler's Acts or Omissions.

As a direct and proximate result of Knoedler's acts and/or omissions, the Museum has suffered damages. In this regard, on June 22, 2001, the Museum returned Spring Sowing to the Italian government. Second Amended Complaint at Paragraph 21. On or about December 14, 2001, the Museum demanded Knoedler compensate the Museum for the value of Spring Sowing. Id. at Paragraph 23. Knoedler has denied the Museum's request. Id. at Paragraph 24.

### D. The Museum Has Set Forth a Claim That Knoedler Knew or Had Reasonable Cause to Know the Consequences of Its Representations.

The Second Amended Complaint sets forth allegations that Knoedler knew or had cause to know that its representations would result in the consequences at issue. See Count III, Fraud and Deceit, Second Amended Complaint. Nonetheless, it is not necessary to allege deceit, bad faith or actual fraud for this Court to apply the Doctrine of Equitable Estoppel. Indeed, many of the cases wherein the Court has applied

8

the Doctrine of Equitable Estoppel relate to defendants' assertions of the statutes of limitations. See e.g. MacKeen v. Kasinskas, 333 Mass. 695, 698 (1956). In MacKeen, the Court relied upon McLearn v. Hill, 276 Mass. 519, 524, wherein "it was said that it was not necessary to charge deceit, bad faith or actual fraud. 'Facts falling short of these elements may constitute conduct contrary to general principles of fair dealing and to the good conscience which ought to actuate individuals and which it is the design of courts to enforce. It is in the main to accomplish the prevention of results contrary to good conscience and fair dealing that the doctrine of Estoppel has been formulated and taken its place as a part of the law.'" Id. In McLearn, the Court held that the Defendant may be estopped from defending based upon Statute of Limitations and observed that "fraud in its strict sense is not essential to Estoppel." Id. at 527. Rather "an Estoppel may be created not only by 'fraud arising from an intention to mislead' but also by 'words or conduct not consonant with fairness and designed to induce action by the Plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects.'" Knight v. Lawrence, 331 Mass. 293, 295 (1954) citing McLearn, supra at 527; compare Labonte v. The New York, New Haven & Hartford Railroad Company, 341 Mass. 127, 131 (1960) citing Knight at 295 ("the words or conduct [which estop one from invoking the statute of limitations] must be such that a reasonable man would rely thereon."). For purposes of the within Motion, the Museum's reliance upon Knoedler's representations were reasonable.

To refuse application of the Doctrine of Equitable Estoppel in the within matter would be inequitable. See Boston & Albany Railroad, supra, at 291. Such inequity is particularly compelling when viewed in light of the Rule 12 (c) standard requiring this

Court to accept all factual allegations of the Second Amended Complaint as true. See Blank v. Berman, 598 F. Supp. 1081, 1083 (D. Mass. 1994).

     E.    **Magistrate Judge Neiman Was Correct In Recommending That Knoedler's Refusal To Pay the Museum's Settlement Demand in December, 2001 Could Give Rise To a New Breach of Warranty In Violation of M.G.L. c.93A**

The Museum asserts that Knoedler's unfair and deceptive practices under M.G.L.c. 93A occurred at the time the Museum demanded the value of the painting, not when the painting was sold, as Knoedler alleges. In this regard, Knoedler committed unfair and deceptive trade practices when it refused to honor the Museum's demand transmitted on December 14, 2001. (Whether a given practice is unfair or deceptive under Chapter 93A must be determined from the circumstances of each case.) Commonwealth v. DeCotis, 366 Mass. 234, 242 (1974); Schuback v. Household Financial Corp., 375 Mass. 133, 137 (1978).

When Knoedler sold Spring Sowing to The Museum, Knoedler guaranteed that it was the painting's lawful owner, that the painting was free from all encumbrances, and that Knoedler had the right to sell Spring Sowing. Such was not the case. False statements of fact made of the parties' own knowledge and susceptible of actual knowledge will support an action of deceit without further proof of an actual intent to deceive for purposes of the deceptive trade act or practice statute. Graves v. R.M. Packer, Inc., 702 N.E. 2d, 45 Mass. App. Ct. 760 rev. den. 707 N.E. 2d 21 (1998). Because the sale of Spring Sowing was invalid whereas Knoedler was not its rightful owner at the time of sale, Knoedler was obligated to reimburse the Museum for its damages. By failing to do so, Knoedler has committed unfair and deceptive trade practices in violation of M.G.L. c. 93A §§ 2, 11.

## II. CONCLUSION

For the reasons set forth above, as well as set forth in the materials presented to Magistrate Judge Neiman, Knoedler's instant Objection should be denied.

SPRINGFIELD LIBRARY AND
MUSEUMS ASSOCIATION, INC.

_____
MARK D MASON, ESQUIRE
Cooley, Shrair, P.C.
1380 Main Street, Fifth Floor
Springfield, MA 01103
Telephone: (413) 735-8040
Fax: (413) 733-3042
BBO# 544936

Dated: April 6, 2004

## CERTIFICATE OF SERVICE

I, Mark D. Mason, Attorney for the Plaintiff, do hereby certify that on April 6, 2004, I served or caused to be served upon Defendant a copy of Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings by mailing same via First Class Mail, postage prepaid, upon:

Andrius Kontrimas, Esquire
Kerry M. McMahon, Esquire
Jenkins & Gilchrist
1100 Louisiana
Suite 1800
Houston, TX 77002

Kenneth W. Salinger, Esquire
Amy J. Berks, Esquire
Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199

#60400

_____
MARK D MASON, ESQUIRE

11